No. 23,617.

THE FARMERS & MERCHANTS STATE BANK OF CLAFLIN, *Plaintiff*, v. FRANKLIN H. FOSTER, as Bank Commissioner of the State of Kansas, *Defendant*.

SYLLABUS BY THE COURT.

STATE BANK GUARANTY ACT—*Depositor Entitled to Protection of Guaranty Fund.* A certificate under section 598 of the General Statutes of 1915 should be issued by the bank commissioner to a depositor in a failed bank which had operated under sections 595-609 of the General Statutes of 1915, the state bank guaranty act, where the depositor holds, or is entitled to, a time certificate of deposit bearing the rate of interest prescribed by the bank commissioner and it is not shown that the bank was to pay or the depositor receive anything other than the certificate of deposit bearing the proper rate of interest, although it does appear that there was some contract between those negotiating the deposit, other than what appears on the face of the certificate.

Original proceedings in mandamus. Opinion filed November 4, 1922. Writ allowed.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, Forest D. Siefkin, James G. Norton,* all of Wichita, and *R. C. Russell,* of Great Bend, for the plaintiff.

*Richard J. Hopkins,* attorney-general, *John G. Egan,* assistant attorney-general, *J. B. Larimer, A. A. Godard, J. Arthur Myers, Robert Stone, George T. McDermott,* and *Robert L. Webb,* all of Topeka, for the defendant.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff seeks to compel the defendant to issue to the plaintiff a certificate for $20,000 with interest thereon against the bank guaranty fund. An alternative writ of mandamus

has been issued, and a return thereto has been filed. Honorable Charles L. Hunt, of Concordia, was appointed commissioner to take the testimony and report to the court his findings of fact and conclusions of law. That report has been made. On the facts found by the commissioner, he concluded that a peremptory writ of mandamus should issue.

This litigation arises out of the failure of the Kansas State Bank of Salina. At the time of the transactions out of which this action grew, R. L. Hamilton was president and active managing officer of the Farmers & Merchants State Bank of Claflin. H. J. Lefferdink was the cashier of the Kansas State Bank, and E. J. Guilbert was its president. Felix Broeker had been cashier of the latter bank. Lefferdink and Broeker were intimately associated with each other in business matters outside the bank. At the time of these transactions, the Kansas State Bank was in a failing condition.

In the latter part of February, 1919, Broeker met Hamilton in Wichita and requested that the latter make a deposit for the plaintiff in the Kansas State Bank. A day or two after that, Guilbert met Hamilton in Hutchinson and solicited a deposit. After the conversation between Guilbert and Hamilton in Hutchinson, the former wrote the latter, February 25, 1919, and again solicited a deposit, and in the letter said, "We will also pay four per cent on certificates of deposit for six months, and in addition Mr. Lefferdink and myself will agree to add three per cent personally in order to build up a good strong reserve." Nothing came of those solicitations at that time.

On March 10, 1919, Broeker, from Kansas City, Mo., in the presence of Lefferdink, called Hamilton over the long-distance telephone and solicited a deposit of $10,000 by the plaintiff in the Kansas State Bank. That deposit was made, and a certificate of deposit was issued, dated March 12, 1919, payable in six months with interest at four per cent per annum, the rate fixed by the bank commissioner.

On March 19, 1919, Broeker, from Kansas City, Mo., in the presence of Lefferdink, again called Hamilton by telephone and solicited another deposit of $10,000. Hamilton agreed to make such deposit for three months. Under agreement, the Kansas State Bank issued a draft for $10,000 on the plaintiff bank. That draft was paid, and the money was received by the Kansas State Bank, but no certificate of deposit was issued for the last $10,000. On the same day, and after Hamilton had agreed to make the last deposit, Broeker, from

Kansas City, wrote Hamilton as follows: "In compliance with my agreement, I am enclosing herewith Mr. Lefferdink's check, in the amount of $1,000, and wish to assure you that we appreciate your assistance at this time very much." That check was one signed by the Bankers Land, Cattle & Development Company, and was received by Hamilton on March 20, 1919, but he did not cash it, nor attempt to cash it.

Among the findings of fact made by the commissioner are the following:

"9. There is no positive testimony from any witness that the plaintiff bank, or any of its officers, were promised anything in the way of extra interest, compensation or bonus for the making of these advancements, and both Mr. Hamilton and Mr. Broeker deny that any such arrangements existed, but your commissioner believes, from all the circumstances, and therefore finds it to be a fact, that the funds were advanced on the promise of both Broeker and Lefferdink that the plaintiff, or its president, Mr. Hamilton, should receive some sum of money, in at least the amount of $1,000.00, as bonus or extra interest, and that the one-thousand-dollar check referred to was drawn and transmitted to Mr. Hamilton in compliance with that agreement, but your commissioner is unable to determine from the evidence the exact terms thereof. There is no evidence that the agreement required the Kansas State Bank to pay such extra compensation, and the bank did not pay or offer to pay it. Plaintiff would not have made this advancement except on the faith of such agreement, and except for the belief on the part of Mr. Hamilton that such advancements would be protected by the Bank Guaranty Law.

"10. There is no evidence that the proceeds of the second advancement of ten thousand dollars were improperly or wrongfully passed to the credit of either Felix Broeker or the Bankers Land, Cattle & Development Company, and if the passing of such credits was wrongful, the plaintiff had no knowledge thereof.

"11. Neither the plaintiff bank, nor any of its officers, actually received any extra money or compensation for making the advancements or deposits or (of) twenty thousand dollars. The Kansas State Bank received the full benefit of that amount so advanced by the plaintiff bank. There is no evidence that had the one-thousand-dollar check been presented and paid the assets of the Kansas State Bank would have been decreased."

The plaintiff cites *Mortgage Trust Co. v. Bank Commissioner*, 110 Kan. 786, 205 Pac. 610, where this court said:

"A deposit in a bank for which a certificate was issued bearing interest at the rate approved by the bank commissioner is not rendered invalid nor taken out of the protection of the state guaranty fund because it was solicited by a third party not the agent of the bank, and who to advance his own interest paid the depositor a bonus to procure the making of a deposit." (Syl. ¶ 1.)

The difference between the present case and the case cited is that

here Broeker had been cashier of the Kansas State Bank and Lefferdink, who was present during the telephone conversation by Broeker, was cashier of that bank; in the case cited, the persons who solicited the deposit had no connection with the bank. In the present case, the plaintiff bank did not get the benefit of the $1,000 check; in the case cited, the mortgage company received the benefit of the money paid by those who solicited the deposit. The findings show that the Kansas State Bank received the benefit of each deposit of $10,000.

If there was a contract, the court does not know its terms nor who was to be benefited by it. There is nothing to show that either of the banks was to receive or pay anything under it.

If the claim of the plaintiff cannot be paid out of the guaranty fund, it is because of that part of section 601 of the General Statutes of 1915, which reads as follows:

"After the passage of this act any officer of any bank who shall pay interest on different terms or in excess of a rate (which rate shall be uniform within each county) that shall be approved by the bank commissioner from time to time, on any form of deposits or pays any interest on any savings deposit withdrawn before July 1, or January 1, next following the date of the deposit, or on any time certificate cashed before maturity, shall be deemed to be reckless and may be removed from office as provided by law, and such bank shall not be permitted to participate in the benefits of this act. . . . Any managing officer of any bank guaranteed under this act, or any person acting in its behalf or for its benefits, who shall hereafter pay or promise to pay any depositor, either directly or indirectly, any rate of interest on different terms or in excess of or in addition to the maximum rate of interest permitted by this act, or who shall, with intent to evade any of the provisions of this act, pledge the time certificate or other obligation of such bank as security for the personal obligation of himself or any other person, or who shall display any card or other advertising tending to convey the impression that the deposits of the bank are guaranteed by the state of Kansas, either directly or indirectly, shall disqualify the bank from further participation in the bank depositors' guaranty fund, and forfeit its bonds or money deposited in lieu thereof, with the state treasurer for the benefit of such fund . . ."

It has not been shown that the prohibitions of this statute have been violated. There is nothing to take this case out of the rule declared in *Mortgage Trust Co. v. Bank Commissioner*, 110 Kan. 786, 205 Pac. 610. It follows that the peremptory writ of mandamus should be allowed.

The writ shall issue.