## STATE OF KANSAS

### JULY TERM, 1923

#### PRESENT:

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. JOHN MARSHALL,
Hon. JOHN S. DAWSON,      } Justices.
Hon. W. W. HARVEY,
Hon. RICHARD J. HOPKINS,

No. 23,409.

First State Bank of Fredericksburg, Iowa, *Plaintiff*, v. Carl
J. Peterson, as Bank Commissioner, *Defendant*.

SYLLABUS BY THE COURT.

1. Mandamus—*State Bank Guarantee Fund—Only the Deposit of Money or
its Equivalent is Protected by the State Guarantee Fund.* A transaction
by which certificates of deposit were issued by a bank based upon notes
executed by an insolvent person which purported to be secured by a trust
deed on land which were made in settlement of an indebtedness of the
maker of the note to certain creditors, in whose names the certificates were
issued, and where these creditors deposited no money in the bank, and
it is shown that there was a lack of good faith in the maker of the notes
and the cashier of the bank in placing and accepting the notes of the maker
in the bank as money and as a basis for the certificates of deposit, such
notes and trust deed cannot be regarded as a deposit of money within the
meaning of the guaranty act nor can the certificates issued be treated as
valid liabilities against the guaranty fund.

Original proceeding in mandamus. Opinion filed July 7, 1923. Writ denied.

*W. M. Glenn,* of Tribune, for the plaintiff; *William G. Holt,* of Kansas City, and *Z. C. Millikin,* of Salina, of counsel.

*Charles B. Griffith,* attorney-general, *John G. Egan,* assistant attorney-general, and *J. B. Larimer,* of Topeka, for the defendant.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding in mandamus to compel the bank commissioner to issue to the plaintiff as a depositor a certificate for $5,200, payable out of the bank guaranty fund. The testimony shows that on February 9, 1919, the Kansas State Bank of Salina issued a certificate which purported to be given for a deposit of $5,200 made by C. L. Kagey, payable to the order of himself, six months after date, with interest at the rate of three per cent for the time specified. This certificate of deposit has been transferred to the plaintiff. At the time of the issue the bank and those managing it were in financial stress and shortly afterwards were declared to be insolvent and passed into the hands of a receiver. Felix Broeker had been in practical control of the bank, which carried on for a time under the name of The Traders State Bank, and because of financial difficulties resulting from its operations Broeker was removed and the bank was reorganized under another name with H. J. Lefferdink, as cashier. Notwithstanding the change Broeker continued to be a dominating factor in its management and he was indebted to it in a large amount. A number of schemes were resorted to to care for its obligations, and among them was the issuance of certificates of deposit on one basis and another. The history of some of them is revealed in earlier cases. (*National Bank v. Bank Commissioner,* 110 Kan. 380, 214 Pac. 715; *State Bank v. Bank Commissioner,* 110 Kan. 520, 204 Pac. 709; *Bank v. Bank Commissioner,* 112 Kan. 141, 210 Pac. 490.)

C. L. Kagey and W. S. McClintock, had been employed as counsel for Broeker, and for their legal services and expenses he had become indebted to them in the sum of $4,000. To secure the payment of this debt Broeker executed a deed on a 205-acre tract of cutover land in Texas. Later Broeker told them that he was unable to pay the debt and that they would have to accept the land which had been pledged to them in payment of his obligation. In July, 1918, he executed to them an assignment of his right of redemption in this tract of land. There were liens upon it, part of which they paid, and the liens so paid when added to their claim, amounted to $7,700. An

effort was made to have the bank take this equity which Kagey and
McClintock had taken on their claim against Broeker. The plan was
to transfer the equity to Walter E. Wilson as trustee for the bank,
and to that end they were to execute quitclaim deeds to the trustee,
and this was done and the deeds were delivered to Wilson. Broeker
was to arrange with the bank to make a deposit there and have the
bank issue to Kagey and McClintock certificates of deposit in the
aggregate amount of $7,700, an amount equal to their interest in
the land, which afterwards proved to be worth no more than the
liens existing against it. To carry out the plan Broeker, on February
7, executed his notes to the bank and procured it to issue two cer-
tificates of deposit, one for $5,200, the one involved herein, and the
other for $2,500. The certificates were issued, not in the name of
Broeker whose notes were given to the bank in exchange for the
certificates, but they were made payable to C. L. Kagey. While the
transfer of the Texas land was made to secure Broeker's notes, it
appears that Wilson did not know in advance of the kind of notes
that were to be given, nor did he know that Broeker's notes had
been turned into the bank as a basis for the issuance of the certifi-
cates of deposit until they had been issued and delivered. In 1917,
Wilson, as bank commissioner, had ordered that no more of Broe-
ker's paper should be accepted by the bank. Early in 1918 he
found that the order had not been observed and at that time he re-
moved Broeker as an officer of the bank, and following the removal
the bank was reorganized and its name changed. Through the action
of the bank commissioner the amount of the Broeker paper in the
bank was greatly reduced, but in January, 1919, the commissioner
discovered that a large amount of Broeker paper was still in the
bank. He also learned that certificates of deposit to a great amount
had been issued and offered for sale with which to purchase a ranch
in New Mexico, putting that property, in a company with Nebraska
and Texas ranches in which Broeker and Lefferdink had an interest,
as a basis for a bond issue with a view of taking Broeker's paper
out of the bank. At the time the certificates in question were issued
Broeker was owing the bank about $130,000. The bank commis-
sioner had placed his deputy in the bank to supervise it and prevent
the reckless issuance of certificates of deposit. The deputy was
present during the day on February 7, 1919, and when he left the
bank at the close of business on that day, the Kagey certificates

had not been issued, nor had the two Broeker notes given in exchange for the certificates been placed in the bank. However, when he returned in the morning he found a memorandum saying that there had been a transfer of Texas land and that the land and Broeker's notes were the basis of the certificates of deposit issued to Kagey. The deputy testified that there was no money in the bank to loan to anyone and that Broeker was deeply indebted to the bank. Wilson testified that the Texas land deeded to him was to be put into the contemplated company on which bonds were to be issued. He also stated that Broeker did not have the money and that the bank did not have the money, but that the issuance of the certificates was made in the settlement with Kagey and McClintock. There was nothing of value in the equity in the land transferred, and the testimony shows beyond dispute that Broeker's notes had no bankable, commercial or market value.

We have to determine whether the transfer made of the equitable interest in real estate to the trustee for the bank together with the giving of the Broeker notes constituted a legal basis for the issuance of certificates of deposit within the protection of the guaranty fund. It is said that the bank accepted the Broeker notes secured by the trust deed and instead of paying him the proceeds of the discounted paper they were paid to Kagey pursuant to the direction of Broeker and in accordance with an agreement previously made. Counsel for plaintiffs say that Kagey and McClintock had taken the property as security for what Broeker owed them, had paid off vendor's liens upon it, and that by the final transfer of the land to them Broeker's debt was paid and when they transferred the land to the trustee for the bank it acquired the Broeker notes with the same security, and the fact that nothing was realized from the property or upon the Broeker notes does not affect the validity of the certificates of deposit nor make them any the less a liability of the guaranty fund. They argue that the bank had the right to discount Broeker's notes on such terms as Lefferdink, the cashier, saw fit, had the right to take them at par value, and the fact that they were not of that value and turned out to be of no value is not material so far as the legality of the certificates are concerned. The question is, was there in fact a deposit in the bank within the purpose of the guaranty act which warranted the issuance of the certificates payable out of the guaranty fund. That fund is only liable for actual

deposits of money or its equivalent. It is contemplated that the deposit shall be cash or checks or drafts of individuals or of solvent persons or banks, which is as good as cash and something which is ordinarily received and credited as cash. It has been held that:

"In creating a deposit, pure formalities may be dispensed with, such as taking money across the counter on a matured certificate of deposit, and passing it back to obtain a new certificate. The court has just decided that a deposit may be effected by giving a bank credit in another bank, subject to check or draft. (*Bank v. Foster,* 110 Kan. 520.) In the case just cited, the distinction between a deposit and a loan is discussed. When the primary purpose is not to establish the relation of debtor and creditor between bank and depositor, but to discharge some matured obligation of the bank by giving a time certificate of deposit, the certificate is no more than a bill payable. Speaking generally, to create a deposit, within the meaning of the statute, money or the equivalent of money must in intention and effect be placed in or at the command of the bank, under circumstances which do not transgress specific limitations of the bank guaranty law." (*National Bank v. Bank Commissioner,* 110 Kan. 380, 389, 204 Pac. 715.)

The bank may not issue guaranteed certificates based on rediscounted bills, bills payable, nor for borrowed money (Gen. Stat. 1915, § 600), but only for a real money deposit. It could not issue such a certificate based on a real-estate transfer or the settlement of the indebtedness of Broeker. Kagey, to whom the certificates were issued, had not deposited any money with the bank, Broeker had no money in the bank, nor had any money or the equivalent of money been deposited by anyone. The bank had no right to receive real estate as money. Broeker's notes were not taken and treated as cash but were taken in connection with the supposed security, and these were made the basis of the certificates. It is manifest that it was a scheme between the bank and Broeker by which he might settle a claim of Broeker's attorneys against him. While the attorneys were entitled to payment of their claims, and we assume that they acted in good faith in transferring their interest in the land in order to obtain payment, but it is obvious that there was a lack of good faith by Broeker and Lefferdink in the surreptitious issuance of the certificates to enable Broeker to discharge his personal obligations and promote his personal speculations. He had no money in the bank and both knew that the notes placed in the bank did not approach the equivalent of money. The law contemplates that the guaranty fund shall only be liable on certificates issued on deposits of money made in good faith. It was

not the purpose of the law that the fund and the banks which contribute to and maintain the fund should guarantee and be bound for the payment of certificates based on such a questionable transaction as the testimony here reveals. The fact that the bank commissioner did not recall and secure the cancellation of the certificates adds nothing to their binding effect. He understood before the certificates were issued that Broeker was to make a deposit but he did not know that there was to be an exchange of Broeker's notes for certificates of deposit. Even if he had known of the purpose he could not by contract or consent make the fund liable upon a certificate issued without the making of an actual deposit nor where it was issued in violation of law. (*National Bank v. Bank Commissioner,* 110 Kan. 380, 204 Pac. 715; *Barber County v. Foster,* 113 Kan. 180.) Whether the basis of the certificate issued may be called billls payable or whatever they may be termed, it is clear that they cannot be regarded as deposits within the protection of the guaranty fund.

The writ asked is therefore denied.

HOPKINS, J., not sitting.