No. 24,613.

NELLIE B. KOELLING, *Plaintiff*, v. CARL J. PETERSON (substituted for FRANKLIN H. FOSTER), as State Bank Commissioner, *Defendant*.

SYLLABUS BY THE COURT.

DEPOSITORS' GUARANTY FUND—*Deposit Bearing Excessive Rate of Interest—Not Within Protection of the Law.* A deposit bearing interest in excess of a rate, uniform within the county which has been approved by the bank commissioner, is not within the protection of the bank depositors' guaranty fund.

Original proceeding in mandamus. Opinion filed July 7, 1923. Writ denied.

*William H. Burnett, A. C. Malloy, R. C. Davis,* and *Warren H. White,* all of Hutchinson, for the plaintiff.

*Charles B. Griffith,* attorney-general, *John G. Egan, W. C. Ralston,* assistants attorney-general, and *J. B. Larimer,* of Topeka, for the defendant.

The opinion of the court was delivered by

HOPKINS, J.: The action is one of mandamus to compel the bank commissioner to issue a certificate on the bank depositors guaranty fund in favor of the plaintiff for money deposited in the Aulne State Bank.

The plaintiff is a sister of V. O. Johnson who was cashier of the bank during all of the transactions here involved and at the time of its closing. The evidence shows that when the bank was closed there were two accounts to the credit of the plaintiff, one for $5,000 and the other for a balance of $763.85; that the first account was begun December 5, 1918, by a deposit of $3,000, which the plaintiff sent to her brother V. O. Johnson to invest for her in a real-estate mortgage. Instead of so investing it, he placed it to her credit in the bank and sent her a pass book showing the deposit to her credit. There was an arrangement between them that she would send him further sums until, together with the $3,000, the total would be $5,000, and then that he would invest the $5,000 in a real-estate mortgage loan. She sent further sums which, together with interest on the $3,000 at the rate of 6 per cent per annum from December 5, 1918, to March 18, 1919, of $46.50, made a total of $5,000. On March 22, 1919, the plaintiff opened the second or checking account by a deposit of $4,360. Following this, further deposits were made, and she checked against the account until, when the

bank closed there remained the balance of $763.85. A deposit in this account of $400 March 8, 1920, was interest at the rate of 8 per cent per annum on the $5,000 in the other account; the interest being credited on the checking account. The plaintiff has received two dividends from the receiver since the bank was closed, leaving a balance, as she claims, of $3,458.32, for which amount she asks a certificate on the bank depositors' guaranty fund. On the plaintiff's first pass book, showing the original deposit of $3,000 appears this language: "This account to draw 8 per cent interest from date. Do not check on this account. V. O. Johnson, Cash." On the other pass book appears this language: "This account to draw 6 per cent interest from date March 22, 1919. This account can be checked on. V. O. Johnson, Cashier."

There were two witnesses in the case, the plaintiff and her brother, V. O. Johnson. The testimony was taken by deposition. The plaintiff claimed that the first time she learned that interest was to be paid her was in the latter part of March, 1920. Her claim is followed by the assertion of Johnson that he made the entries in the pass book showing the interest on March 22, 1920. There appears no testimony to show that the plaintiff objected to the crediting of the interest to her in either of the accounts or objected to the promise to pay her interest on the first account at the rate of 8 per cent per annum, or on the second account at the rate of 6 per cent per annum. Her claim to the bank commissioner was for a certificate upon the bank depositors' guaranty fund for a total of the balance in both accounts, which includes the interest, less the dividends which she has received. She has already received a substantial percentage of the excessive interest by way of dividends and the amount of the claim which she is pressing in this suit includes interest on the accounts respectively of 8 and 6 per cent. It was claimed by Johnson, the cashier and managing officer of the bank, that he paid the interest out of his personal account. He was questioned and testified as follows:

"Q. Why didn't you make an effort to invest her money in a real estate loan? A. Just did not like to see the deposit go out of the bank.

"Q. Why did you pay the interest? A. I did not wish the bank to be out that expense, and to hold the reserve up because the bank was in a failing condition at that time, and I thought she was entitled to the interest due to my neglect in securing the mortgage."

It is apparent that Johnson's actions were in the interest of and for the benefit of the bank, although he assigned, as an additional

reason, that he desired to help his sister because of his failure to secure the mortgage loan.

It was stipulated by the parties that at all the times during the transactions in controversy there was in force and effect an order and rule, made and approved by the bank commissioner, providing that time certificates of deposit might draw interest, not in excess of 4 per cent and other forms of deposit not in excess of 3 per cent.

Section 601 of the General Statutes of 1915 reads as follows:

"Each guaranteed bank, and each state or private bank not guaranteed by this act, shall keep a correct record of the interest rate and terms of each deposit on which it has paid or agreed to pay interest, and shall make a statement thereof, under oath, to the bank commissioner quarterly. After the passage of this act any officer of any bank who shall pay interest on different terms or in excess of a rate (which rate shall be uniform within each county) that shall be approved by the bank commissioner from time to time, on any form of deposits, or pays any interest on any savings deposit withdrawn before July 1, or January 1, next following the date of the deposit, or on any time certificate cashed before maturity, shall be deemed to be reckless and may be removed from office as provided by law, and such bank shall not be permitted to participate in the benefits of this act;  . . .  Any managing officer of any bank guaranteed under this act, or any person acting in its behalf or for its benefit, who shall hereafter pay or promise to pay any depositor, either directly or indirectly, any rate of interest on different terms or in excess of or in addition to the maximum rate of interest permitted by this act, . . .  shall disqualify the bank from further participation in the bank depositors' guaranty fund, and forfeit its bonds, or money deposited in lieu thereof, with the state treasurer for the benefit of such fund."

The statute expressly applies to the cashier or other managing officer of the bank. . Johnson was such officer. He was acting for and on its behalf. The statute directly and specifically forbade this kind of transaction. The bank, through him, promised to pay the excessive interest and he, according to his own testimony, paid the interest and did it in behalf of and for the benefit of the bank. Under the terms of the statute the payment of the interest by Johnson, for which he could be found reckless and removed from office, were grounds for disqualifying the bank from further participation in the bank depositors' guaranty fund. It appears that, not only was the promise made to pay the excessive interest, but a substantial part, at least, of it has already been paid, and plaintiff is still asserting her claim to it by demanding a certificate for it on the guaranty fund.

In *Barber County v. Bank Commissioner,* 113 Kan. 180, 187, 213 Pac. 1054, it was said:

"The principle that a deposit bearing a rate of interest in excess of that approved by the bank commissioner is not protected by the bank guaranty fund is not new in this court. It has been uniformly applied and made the basis of the decision of the court when appropriate. (*National Bank v. Bank Commissioner,* 110 Kan. 380, 204 Pac. 715; *State Bank v. Bank Commissioner,* 110 Kan. 520, 204 Pac. 709; *Mortgage Trust Co. v. Bank Commissioner,* 110 Kan. 786, 205 Pac. 610; *Bank v. Bank Commissioner,* 112 Kan. 141, 210 Pac. 490.)"

The conclusion seems irresistible that the rate paid was in excess of a rate, uniform in the county, that had been approved by the bank commissioner, and the deposit therefore is not protected by the bank guaranty law.

The application for a peremptory writ is denied.