No. 25,227.

W. C. BURNAMAN, *Plaintiff*, v. CARL J. PETERSON, as Bank Commissioner, *Defendant.*

SYLLABUS BY THE COURT.

1. BANK GUARANTY FUND—*Order of Bank Commissioner Prescribing Limit of Interest on Deposits—Excessive Interest Received—Deposit Not Protected by Guaranty Law.* Where the bank commissioner under authority of law (R. S. 9-207) has prescribed a maximum interest rate for savings accounts entitled to the protection of the bank guaranty fund, any rate of interest in excess of such prescribed maximum allowed by the bank and received by the owner of the account has the effect of placing such savings account outside the protection of the guaranty fund; and where the bank commissioner's order approving a maximum rate of such interest is prescribed at 4 per cent to be compounded semiannually, the receipt of 4 per cent interest credited quarterly to such a savings account is such an infraction of the regulatory order concerning maximum interest rates as will exclude the account from the benefit of the guaranty fund.

2. SAME—*Infractions of Statute by Knowledge and Assent of Bank Commissioner.* Rule followed that notice to the bank commissioner, or his knowledge and informal assent or acquiescence in infractions of statute, departmental orders, or of sound bank practices, are unavailing to validate irregular claims on the bank guaranty fund.

Original proceeding in mandamus. Opinion filed February 7, 1925. Writ denied.

*Edgar Bennett,* of Washington, for the plaintiff.

*Charles B. Griffith,* attorney-general, *John G. Egan,* assistant attorney-general, and *J. B. Larimer,* of Topeka, for the defendant.

The opinion of the court was delivered by

DAWSON, J.: This action is to require the bank commissioner to issue a certificate on the guaranty fund for $460.43, which was the amount of plaintiff's savings account in the guaranteed Farmers State Bank of Washington, which became insolvent on April 24, 1922.

Plaintiff's deposit was evidenced by a savings pass-book in which his account with the bank had been kept for several years. It showed that every three months since 1915 the earned interest had been entered as a credit augmenting the account. At various times the bank commissioner issued rules regulating the rates of interest payable on such accounts, none of which will need present attention except the rule promulgated on September 1, 1921. It provided:

"(3) On savings deposits represented by entries made in a book which substantially conforms to the standard form of savings pass-book in use by savings banks, a rate of interest not exceeding four per cent, compounded semiannually, may be paid: *Provided,* Interest payments on such deposits shall not be paid or credited except on July 1 and January 1 next following the date of deposit, and no interest shall be paid or accredited on any amount withdrawn after an interest-paying date and before the next semiannual date for computing interest: *And provided further,* That such savings account must not be used in any sense or to any extent as a checking account."

The bank and the plaintiff ignored this order, and the interest earned on the savings deposit at the rate of 4 per cent per annum was regularly entered as a credit augmenting the sum total of the savings account every three months just as had always been done by that bank before such details had been deemed needful of regulation by the bank commissioner. On the quarterly dates of October 1, 1921, January 1, 1922, and April 1, 1922, the items of earned interest were thus credited in violation of the order of September 1, 1921. The bank failed about three weeks after the last breach of the order of the bank commissioner. Can plaintiff recover?

The legislature, after experimenting for two years with statutory maximum rates of interest for protected deposits (Laws 1909, ch. 61, § 6), altered the law so as to authorize the bank commissioner to prescribe maximum rates of interest on guaranteed deposits. (R. S. 9-207.) The fixing of the frequency of such payments was a proper and logical incident to the complete and efficient exercise of the commissioner's regulatory authority. There is nothing arbitrary or unreasonable in a rule that the interest earned on guaranteed savings

deposits shall not be entered oftener than every six months. A more frequent entering of credits for interest earned has the very obvious effect of increasing the maximum rate of annual or semiannual interest which the bank commissioner authorized the banks to pay.

The point is urged that the bank commissioner had knowingly permitted this bank to pay interest on deposits at other rates and on different terms than those authorized by statute or regulatory orders of the bank commissioner. But the effect of notice to the bank commissioner, of his knowledge, informal assent or acquiescence in such infractions of law, departmental orders, or of sound banking practices, has been thoroughly threshed out in previous decisions, and held to be unavailing to validate irregular claims upon the bank guaranty fund. The general rule is that negligence or other wrongful conduct of public officers does not alter or modify the effect of positive statutes or the principles of substantive law. In *State Bank v. Bank Commissioner,* 110 Kan. 520, 204 Pac. 709, it was said:

"It is urged that the bank commissioner is precluded by the conduct of his predecessor from contesting the validity of the certificates as claims against the guaranty fund. Bank Commissioner Wilson did undertake to assure Crummer that the certificates of deposit would be within its protection, but that was merely an expression of opinion on a question of law. The bank commissioner could not by contract make the fund liable; the matter of liability was determined by the statute. . . . Moreover, the guaranty fund is created for the benefit of the public, and the public although not its owner is interested in it. Public rights are not ordinarily subject to loss by estoppel through the conduct of officers." (pp. 530, 531. See, also, *Koelling v. Bank Commissioner,* 114 Kan. 109, 216 Pac. 1099.)

It is also urged that the difference between the maximum authorized rate of interest and that received by plaintiff was so trivial—less than nine cents per annum—that the breach of the order of the bank commissioner was no more than technical, and that it carried no badge of fraud or collusion to frustrate the bank commissioner's orders designed to prevent reckless banking by the payment of unduly high rates of interest to procure deposits. If the case were one of purely equitable cognizance and affecting only the relative rights of private litigants, this argument might make a strong appeal. But this is *mandamus.* And it affects a trust fund of great importance and of a *quasi* public character. We are asked to *compel* the bank commissioner to disregard the breach of his own regulatory order because in this instance the result of the breach was negligible in dollars and cents. In effect, also, we are asked to ignore the statute,

R. S. 9-206. The court cannot do that. Because the plaintiff's savings deposit was only a few hundred dollars, the result of paying interest quarterly instead of semiannually was but a few cents more than the lawful maximum. But another depositor in this same bank may have had a deposit of a few thousand dollars under a similar arrangement. The difference in that case would have been substantial. This court could not issue its writ in favor of the owner of the small deposit and deny it to the owner of a large deposit held under identical circumstances. Since the legislature has authorized the bank commissioner to make rules governing the subject of deposits and the rule itself is reasonable, the court is bound to uphold that officer's reasonable orders. At all events it must not compel him to disregard them. See the analogous cases of *National Bank v. Bank Commissioner*, 110 Kan. 380, 214 Pac. 715; *Barber County v. Bank Commissioner*, 113 Kan. 180, 213 Pac. 1054; *Bank v. Bank Commissioner*, 114 Kan. 1, 216 Pac. 1093; *Barrett v. Bank Commissioner*, 114 Kan. 804, 223 Pac. 1091; id., 115 Kan. 557, 223 Pac. 1091.

Writ denied.