No. 29,311.

THE CITIZENS STATE BANK OF SABETHA, by CHARLES W. JOHNSON, Receiver, *Appellee*, v. E. L. BURNER, *Appellant.*

(291 Pac. 739.)

Opinion filed October 11, 1930.

*James L. Haley,* of Sabetha, and *John C. Mullen,* of Falls City, Neb., for the appellant.

*R. M. Emery, Jr.,* of Seneca, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The question involved in this case is whether the transfer on the books of a state bank of some of its stock in disregard and violation of an order of a deputy bank commissioner invalidates the sale and transfer of the stock to the extent of relieving the purchaser thereof from the double liability thereon, when the deputy bank commissioner later and many months prior to the failure of the bank approved the transfer.

The Citizens State Bank of Sabetha was examined in January, 1927, and among the requirements made of the bank and its officers at that time by the deputy bank commissioner was the following:

"Make no distribution of earnings or transfer any stock without the consent of the bank commissioner."

On April 9 following, the appellant presented to the officers of the bank three certificates of stock issued by the bank to another party, properly assigned to him, and the officers of the bank issued to him a new certificate therefor and entered the transfer on the books of the bank.

The bank was again examined about a month later, and the

deputy listed the new certificates instead of the old ones, sending such information to the bank commissioner, and made the following new order:

"Make no distribution of your earnings or transfer any stock without the written consent of the bank commissioner."

The bank failed March 22, 1928, more than ten months after the recognition and approval of the transfer by the deputy bank commissioner.

The appellant had no knowledge or notice of the existence of such an order, nor of the questionable financial condition of the bank at the time he purchased the stock and had it transferred. His first knowledge as to such matters came after the failure of the bank.

The receiver of the bank brought this action against the appellant to recover the double liability on the stock. The pleadings clearly raise an issue as to the validity of the transfer and the liability of the appellant.

The case was tried to the court upon an agreed statement of facts, which is set out in the journal entry, and judgment was rendered for plaintiff, from which the defendant appeals.

The first point raised by the appellant may readily be conceded, viz., that such a requirement as made by the deputy is one that may be "lawfully made," as provided in R. S. 9-124.

His next contention is that if it were such as could be lawfully made, it would then have the same force and effect as if it were a statute. Without deciding, but for the purpose of argument conceding that to be the case, and this first order of the deputy to have been the same as if contained in the above-described section instead of the words "any requirement lawfully made," we then have the penalties prescribed for the violation or disregard thereof, viz., forfeiture of franchise, revocation of authority to transact a banking business and punishment of the bank officers (R. S. 9-137). There is nothing in the statute to indicate that any or all of its transactions in disregard of such provision are void, invalid or unenforceable.

"Contracts entered into in connection with banking transactions carried on in violation of law are void; but one who has borrowed money from a corporation so violating the law cannot set up the invalidity of the contract to avoid his obligation to repay." (7 C. J. 479.)

The case of *Burnaman v. Bank Commissioner*, 117 Kan. 612,

232 Pac. 1047, is cited by appellant to show the force of an order made by the bank commissioner and by him later, as well as by the bank, disregarded, but there the statute (R. S. 9-206) specifically prescribed that the bank guaranty should not apply where a greater rate of interest had been paid on the deposit than that ordered by the bank commissioner, and that his knowledge and informal assent or acquiescence in infractions of statute or departmental orders are unavailing to validate irregular claims on the bank guaranty fund. The statute there fixed the rights of the parties; here it does not.

It was urged in the case of *Exley v. Harris,* 126 Kan. 302, 267 Pac. 970, that the disregard of the order of the bank commissioner showed the bank to be insolvent, and it was there said:

"The fact that a bank has many excess loans, and permits their aggregate to increase, and that its officers disregard the orders of the bank commissioner to quit making such loans and to reduce those already made, proves willful mismanagement of the bank for which those officers should have been summarily removed (R. S. 9-158), and subjected to criminal prosecution (R. S. 9-137), and the bank's franchise forfeited (R. S. 9-124); but such delinquencies do not prove the bank to be insolvent." (p. 306.)

Appellant urges that this case is the converse of the facts in the case of *Bank v. Strachan,* 89 Kan. 577, 132 Pac. 200, where the owner of bank stock sold it to the bank but did not have the transfer shown on the books of the bank, and he was held not to be released from the superadded liability of a stockholder. The purchaser here, by doing his duty, not knowing of the order, in having the transfer to him entered of record, relieved the vendor and involved himself. The recording of the transfer was there held to be necessary to relieve the vendor from liability, and further that—

"An unregistered transfer of stock would not be invalid as between vendor and vendee . . ., but creditors, stockholders and everyone dealing with the bank may resort to the stock register to ascertain who are entitled to the rights and subject to the liabilities of stockholders." (p. 582.)

The forcible argument quoted by appellant from the opinion in the case of *State Bank v. Bank Commissioner,* 110 Kan. 520, 204 Pac. 709, applies to the public and not to the personal interests and rights of an individual investor, when the court there ruled that public rights should not suffer loss because of an erroneous opinion having been given by the bank commissioner, referring to the rights of depositors in and creditors of the bank.

The case of *State, ex rel., v. Hamblin,* 132 Okla. 266, does not

bear on the real question here, for there the Oklahoma statute authorized the bank commissioner to fix the liability of the stock-holders, and such was held to be conclusive, which is very different from the making of an order, as in this case, not to transfer stock and later approving the transfer. In another Oklahoma case, *Thompson v. State, ex rel.*, 119 Okla. 166, the statute was upheld giving the bank commissioner authority to conclusively determine the insolvency of the bank.

We know of no good reason why the deputy bank commissioner could not very properly waive the application of the order he had made not to transfer any stock, when he saw it had been done and the transfer was not injurious to the rights of the public, including the depositors and creditors of the bank, even if he thought it proper to continue such an order. The real and the intended protection afforded by such an order under the statute was to prevent a transfer to irresponsible parties from whom a double liability assessment could not be recovered to protect the depositors and creditors of the bank. This is all that could reasonably have been contemplated under such an order, and the subsequent approval of, or assent to, such a transfer would remove all question as to the validity of the transfer.

The case of *Riverdale State Bank v. Schmidt*, 123 Kan. 403, 256 Pac. 161, involved the transfer of stock when the bank was claimed to have been insolvent, which was prohibited by the statute (R. S. 9-153), and it was held that the information furnished the bank commissioner by correspondence when it should have been formally certified to him did not make the transfer invalid.

"There was evidence which tended to show that the bank commissioner by correspondence was informed of a transfer of the stock by the defendant. There was evidence to show that the transfer had not been formally certified to the bank commissioner. *Held,* that the failure to formally certify the transfer of the stock did not render the transfer invalid." (Syl.)

"The statute prohibiting the transfer of shares of stock in a failing bank is for the protection of creditors, but as between the buyer and seller of stock the transfer may be binding." (*Bank v. Potter,* 100 Kan. 407, syl. ¶ 4, 164 Pac. 149.)

There was nothing about the requirement or order that could not be waived or even revoked, and when waived by the officer making it for and on behalf of the public, its temporary existence did not affect the validity of any business transaction during that period.

It will be further observed that the order or requirement was

that no transfer of stock be made "without the consent of the bank commissioner." Consent may be given either before or after the occurrence. The word "consent" is defined in 1 Words and Phrases as "the voluntary allowance or acceptance of what is done or proposed to be done by another." (2d ser., p. 896.) Webster's Dictionary gives as synonymous terms "accede, acquiesce, yield, comply, agree, concur."

This court distinguished between consent and joint consent as required by our constitution in placing a mortgage on a homestead where the wife six weeks later than the husband attempted to ratify and approve the mortgage given by him, holding such was not joint consent (*Howell, Jewett & Co. v. McCrie*, 36 Kan. 636, 14 Pac. 257).

We think the consent given in the case at bar was all that was necessary to the validity of the transfer and that the ruling of the trial court was correct.

The judgment is affirmed.