PITTS *v.* PEOPLE'S BANK OF BALDWIN.[*]

(In Banc. Dec. 22, 1924.)

[102 So. 229. No. 23939.]

1. BANKS AND BANKING. *Depositor who received bonus from third party for depositing funds, evidenced by certificates of deposit bearing four per cent. interest, held within protection of Guaranty Law.*

One who deposited funds at solicitation of person to whom bank had agreed to make loan if he could secure additional deposits, and received therefor certificates providing for payment of four per cent. interest, and subsequently, in good faith, received a bonus, believing it to have been paid by such person, was not de-

prived of protection of State Guaranty Law, Hemingway's Code, section 3596, excepting from protection thereof deposits bearing greater rate of interest than four per cent., since in such case there was no agreement between depositor and bank for payment of more than four per cent. interest.

2. BANKS AND BANKING. *Receipt of interest in excess of four per cent. on surrendered certificates of deposit, held not to deprive funds evidenced by new certificate of protection of State Guaranty Law.*
Where certificates of deposit for one year were surrendered, and certificates for following year, providing for payment of four per cent. interest were issued, the funds evidenced by the new certificates were within protection of State Guaranty Law, even if more than four per cent. was received during preceding year, in violation of Hemingway's Code, section 3596, since the deposits for the two years did not constitute one continuous transaction.

SYKES, J., dissenting.

---

*Headnotes 1. Banks and Banking, 7 C. J., section 15 (1926 Anno.);
2. Banks and Banking, 7 C. J., section 15 (1926 Anno.).

APPEAL from chancery court of Lee county.
HON. A. J. McINTYRE, Chancellor.

Petition by L. S. Pitts against the People's Bank of Baldwin, in liquidation, for an order requiring the State Banking Department to issue guaranty certificate in petitioner's favor. From an adverse decree, petitioner appeals. Reversed and rendered.

*Smiths, Young, Leigh & Johnston,* for appellant.

Propositions involved. 1. The introduction in evidence of the time certificates made out a *prima-facie* case against defendant. 2. In order to overcome this *prima-facie* case the appellant had to prove, (a) that there existed an agreement between the bank to pay appellant more than four per cent, or, (b) that the bank, itself, did pay to appellant, with his knowledge, a greater rate of interest than four per cent. 3. Appellant's evidence is uncontradicted and is either false or true. If false, there is no testimony, whatsoever, that could possibly

137 Miss.—16.

overcome the *prima-facie* case made by the introduction in evidence of the certificates of deposit. If true, (a) it shows that Pitts was not promised by the bank more than four per cent interest on the time certificates sued upon. (b) It shows that on the time certificates sued upon Pitts has never been paid any interest. 4. An agreement by a third person to pay a bonus to induce a person to deposit his money in a guaranty bank on time, does not violate the banking guaranty law. 5. Even the payment, or agreement to pay by an officer of the bank, a bonus to induce a person to deposit his money in a bank on time deposit, does not violate the banking guaranty act. In any event, the twelve hundred ($1200) dollars which the appellant received was a payment for placing his money on time deposit for the first year for which the first time certificates were issued. 6. There is no possible theory of the evidence from which the court could legitimately infer that appellant was paid any interest in advance on the time certificates sued upon. 8. The surrender of the 1921 certificates of deposit at their maturity by the appellant and the issuance to him of the 1922 certificates of deposit, constituted new deposits within the meaning of the guaranty banking act.

The question before the court is, did the time certificates issued to appellant bear more than four per cent per annum, and is the decree of the court below on the undisputed facts, a correct decree? We are not unfamiliar with the long line of decisions of this court holding that a decree of a chancery court is equivalent to the verdict of a jury and will not be disturbed unless manifestly erroneous. To that proposition we gladly accede, but will try to show the court in this case that the decree of the court below and the opinion delivered by the court below on the undisputed facts, are manifestly wrong.

The certificates of deposit offered in evidence made out a *prima-facie* case of liability against the defendant below.   These certificates show that the appellant has deposited in the People's Bank of Baldwin, fifteen thousand ($15,000) dollars, which are payable to him in current funds on the return of the certificates properly endorsed twelve months after date, with interest at four per cent per annum for the time specified only, which interest is to be payable after maturity.   To overcome the *prima-facie* case made by the introduction in evidence of the three certificates sued upon, the state banking department must show, (a) either that there was an agreement by which the bank was to pay more than four per cent per annum, or, (b) that the bank, with appellant's knowledge, did pay him more than four per cent per annum.   Appellee, in this case, realized that he would have to prove one of these defenses in order to overcome the *prima-facie* case, for the court will observe that the answer filed averred: ''That the said Pitts received, or was to receive more than four per cent for his deposit.''

Before proceeding, however, to ascertain whether there was any agreement by the bank to pay more than four per cent on the time certificates sued upon, or whether the bank, as a matter of fact, paid more than four per cent on the said time certificates, we deem it advisable to call the court's attention to two cases of the supreme court of Kansas on facts very much similar to the facts of the case at bar.   In the case of *Farm Mortgage Trust Company* v. *Wilson,* 205 Pac. 610, the supreme court of that state said: ''A deposit in a bank, for which a certificate was issued bearing interest at the rate approved by the bank commissioner, is not rendered invalid, nor taken out of the protection of the state guaranty act because it was solicited by a third party, nor the agent of the bank and who to advance his own interest paid depositor a bonus to procure the making of

a deposit.'' In that case the deposit was solicited by one Eberhardt and one Noonan, agents of a life insurance company, who had a separate agreement with a number of banks by which they solicited and obtained deposits from the banks in return, for which the officers of the banks were to aid the agents in securing applicants for life insurance to their company. The agents paid the depositor one hundred dollars as a bonus, which money, if added to the interest upon the certificates issued, would have exceeded the interest allowed by the guaranty banking act. The court in that case held that the payment of a bonus by a third person to secure the deposit did not violate the statute. In the case of *Farmers and Merchants State Bank of Klaflin* v. *Foster,* 210 Pac. 490, the president of the defunct bank, together with the cashier, solicited a deposit from another bank and personally agreed to add three per cent to what their own bank would pay. After quoting the finding of facts by the commissioner authorized to find the facts in the court below, the court observed: ''It has not been shown that the prohibitions of this statute have been violated . . . it follows that a peremptory writ of mandamus will issue.'' The court further observed: ''If there was a contract the court does not know its terms, nor who was to be benefited by it.''

In the case at bar, the evidence is undisputed that the appellant one day met Reed, a lumber man, on a train and the appellant, being solicitous for the future welfare of his son, inquired of Mr. Reed the advantages of the lumber business and stated that he would like for his son to learn the business. The conversation drifted on until the appellant requested Mr. Reed to take his son into the business with him. Reed, however, demurred to this because the capital he had to operate on would not justify another man in his business and then sought to borrow some money from the appellant. The appellant advised him that he could not lend him any money as he

had agreed to protect a note of a friend in Meridian the next year and had to have his money when it became due. Reed then besought the appellant to deposit his money in the People's Bank and told the appellant that he would take his son in and would compensate him for putting his money in the bank, as the bank would let him have the money if they had it. We say this evidence of the appellant is undisputed because the appellees, themselves, introduced as a witness on their behalf Mr. Reed, himself, who corroborated the testimony of the appellant. Mr. Reed testified as follows on cross-examination: "Q. In the conversation with Mr. Pitts did you tell him anything with reference that if he would put the money in the bank, if your business turned out good, you would give him four per cent? A. Not at that time, was nothing said about it at that time. Q. What was that conversation with Mr. Pitts? A. Well I told him later that if Joe (appellant's son), I can't recall the date, but because in the ordinary run of conversation, if Joe did not happen to prove good, or make good in the business, if I made good out of the business I would like to give him something in a way to show my appreciation by his helping me, by putting the money there . . . Q. You did tell Mr. Pitts if you made good money you expected to give him some? A. Yes sir, I did not stipulate any amount."

We respectfully submit that under the two Kansas decisions heretofore referred to, there was nothing immoral or illegal in Reed's and Pitts' agreement. As the court in those cases observed, it is not unusual or uncommon for banks to solicit deposits and the court its own self knows that it is not uncommon for patrons of a bank to solicit deposits for that bank. Pitts testified that Reed told him that if the money was placed in the bank that he would be able to make a loan. He says, however, that he told Mr. Reed, "I will take my money and deposit it for four per cent same as I am getting, and

if you can make arrangements with the bank, that is your business, and he (Reed) then said 'that will be perfectly all right.' " Reed, a witness for appellee, bears out that statement for he testified that Cox (the president of the People's Bank) told him if he could get more deposits he would be able to loan Reed more money. *Farm Mortgage Trust Company* v. *Wilson,* supra, passes upon the identical proposition.

The mere fact that Reed had a prospect or at the greatest an understanding with the president of the bank that, if he secured more deposits he could borrow money from the bank and the fact that he offered Pitts a bonus to put his money in the bank, would not violate our state banking law. The original deposits of five thousand ($5000) dollars each were made respectively, on February 7, 1921, February 10, 1921, February 18, 1921, and three certificates of deposit for five thousand ($5000) dollars each bearing the same date were issued to the appellant. These certificates each matured one year after date, which would make them mature on February 7th, 10th and 18th, 1922, respectively. Before their maturity, however, the president of the People's Bank went to Okalona, Mississippi, where he saw the appellant stepping from the train. The president after shaking hands with the appellant informed him that Mr. Reed was going to send him a present. The appellant knowing his former agreement with Mr. Reed said, "That will be nice." The president of the bank then prevailed upon the appellant to leave his money on deposit for another year, which the appellant did. The president of the bank then mailed to Mr. Pitts two checks, one signed by L. D. Reed for six hundred dollars and one check made out for six hundred dollars but not signed by any one, but sent for the purpose of appellant signing it, so that he could draw out his accrued interest for one year. The date of these checks is February 6, 1922, one day before the maturity of the first time certificate.

The undisputed testimony shows that Reed did not sign the six hundred dollar check to which his name was signed, but on the contrary the handwriting was in that of the president of the bank. By sending this six hundred dollar check signed by L. D. Reed to appellant on the 1921 time certificate, did the bank pay the same with the knowledge on the part of appellant that it was paying this six hundred dollars? The evidence is conclusive on this point that appellant had no such knowledge. Why should the appellant have suspected that the signature was not the signature of Reed? Reed had promised to compensate him; Cox, the president of the bank, told him a day or so before the check was sent that Reed was going to compensate him and the signature of Reed, himself, was signed to the check. The appellant's testimony is either true or false. If true, it is to the effect he thought Reed had sent the money. If false, there is no testimony, whatsoever, on the subject. At any rate, there is no evidence from which the court could deduce the affirmative fact that Pitts knew the bank was paying him six hundred dollars through the forged name of L. D. Reed on the check.

Did the bank, as a matter of fact, pay more than six hundred dollars interest? The evidence undisputably shows that Pitts thought Reed had sent the money. It is true, that the twelve hundred dollars that Pitts received on account of the first year's time certificates came out of the funds of the bank, but unless Pitts had an understanding or knowledge that the bank, itself, was to pay the money, how could he be bound thereby? The very fact that Cox used the name of Reed showed that he did not intend it a payment by the bank and it further shows that he wanted to beguile Pitts into believing that it came from Reed. There is no evidence in this case that the bank paid Pitts six hundred dollars in addition to his four per cent, with the knowledge on the part of Pitts, that it was a payment of the bank and not of Reed.

At the most it would only show that an officer of the bank had taken on himself to assume the obligation of Reed and for that purpose had misappropriated six hundred dollars of the bank's funds.

The amount which Pitts received was on account of the time certificate for the year 1921. The two checks for six hundred dollars each were dated February 6, 1922, a day before the first 1921 certificate matured. It is true, these two checks were not paid by the bank until after the maturity of the three 1921 certificates, but the court must find that the intent of the parties was that the twelve hundred dollars was paid on account of the first time certificates. In the first place, when the checks were sent by the People's Bank of Baldwin, the first certificate of the first year had not matured. In the second place, Pitts positively swears that the twelve hundred dollars was paid him on account of the first year's certificate.

The court is only justified in holding that the twelve hundred dollars which Pitts received was on account of the 1921 certificates. The transaction was closed when Pitts received the twelve hundred dollars and the 1921 certificates were surrendered and the matter became a new transaction when the new certificates were issued, and unless interest was promised by the bank at a greater rate than four per cent on these certificates, or unless the appellant was paid more than four per cent on the 1922 certificates, they are just as valid as, if the deposit had originally been made in 1922 instead of 1921. The 1921 transaction was closed.

How it was possible for the court below to have found that the six hundred dollars which Pitts received on the L. D. Reed check was an advance payment of interest on the 1922 certificates which matured in 1923, we are unable to conceive. The only evidence on the subject is that of Pitts and he swears positively that this money was received by him as compensation for the 1921 de-

posits represented by the 1921 time certificates. Appellant swore positively that the certificates which were issued to him in 1922 provided for four per cent, and that he was not to receive, nor was he promised more than four per cent on the certificates by the bank or any one else. Although the undisputed evidence is that the L. D. Reed check was on account of the 1921 deposits, yet, the court found the affirmative fact that it was on the 1922 loan. The presumption of law is that when money is paid that it is for an indebtedness due, not an indebtedness to come due. In other words, unless there is an express contract to the contrary, interest is never payable in advance. There is no evidence that it was understood between the appellant and any one else that the L. D. Reed check was a prepayment of interest on the 1922 loan represented by the 1923 time certificates.

Are the transactions of the appellant with the People's Bank of Baldwin to be regarded as one deposit or two deposits. The learned counsel representing the State Banking Department made the remarkable argument in the court below that there had been only one deposit within the meaning of the bank guaranty act and that was made in the year 1921 when the first three certificates of deposit were issued and that it did not matter whether the six hundred dollars was paid on account of the 1921 certificates or whether it was paid on the 1922 certificates. The surrender of the 1921 time certificates by the appellant and the issuance to him of new time certificates constitutes a new deposit within the guaranty banking act, and has no connection, whatsoever, with the deposit made the year before. In the case of *Fourth National Bank* v. *Wilson,* 204 Pac. 719, the supreme court of Kansas in defining what the term deposit means said: "There is no all-inclusive or all-exclusive definition of the term deposit, but the essentials are well understood. Money left with a bank, subject to the order of the person leaving it, is a deposit. A deposit may be accomplished

by taking credit on the books of the bank for a discounted note, or even by some obligatory arrangement with the bank for credit. In creating a deposit, pure formalities may be dispensed with, such as taking money across the counter on a matured certificate of deposit and passing it back to obtain a new certificate.'' So we say in the case at bar, the transaction involving the surrender of the 1921 certificates by the appellant and the receipt by him of twelve hundred dollars on account of these certificates and the issuance of the 1922 certificates of deposit constituted a new deposit, just as though the appellant had stepped up to the cashier's window, been paid fifteen thousand dollars, the principal of his deposit and twelve hundred dollars for interest thereon, and then had turned and re-deposited the money in the same bank and accepted new time certificates.

If the agreement was not as testified to by appellant, then there is no evidence of any other agreement. If the appellant's testimony is to be disregarded, then the court below surely, at its best, could only have found itself in the same situation in which the supreme court of Kansas was placed in the *Farmers and Merchants State Bank of Klaflin* v. *Foster,* 210 Pac. 490. After reviewing all the evidence in that case the court says: ''If there was a contract, the court does not know its terms nor who was to be benefited by it.'' The result of that decision was that since the certificates offered in evidence had made out a *prima-facie* case that the appellant had failed to show a contract or transaction which would overcome that *prima-facie* case. So in the case at bar, the only agreement and transaction testified to is that testified to by the appellant.

The decree of the court below is manifestly wrong.

*J. R. Anderson* and *Mitchell & Clayton,* for appellant.

Section 36, chapter 172, Laws of 1922, which amends the Banking Law of 1916, applies and secures appellant.

The certificates of deposit are regular in every way. They were issued by the bank in its regular course of business. They bear upon their face four per cent interest per annum. This places them under the provisions of the statute. They speak for themselves. These certificates, like any other written document, are the best evidence of the contract between the parties. Before they can be impeached the proof must be positive and substantial that there was a fraud perpetrated and the assumption that they did not evidence the true agreement between the parties. There is no proof that the bank agreed to pay to the appellant more than four per cent interest, which is shown by these certificates, or that any other human being, firm, or corporation agreed to pay to the appellant more than the four per cent interest shown in the face of these certificates. No witness attempted to contradict the appellant's testimony. It is conclusively shown that not one dollar of interest has been paid to appellant on the certificates issued in 1922. They were not mature at the time the bank failed. Appellant could not and did not demand interest before the maturity of the certificates. Not a witness was produced who attempted to state that there was any other contract than the one evidenced in writing by these certificates of deposit. These certificates of deposit. These certificates were issued several days after the receipt by appellant of the two checks introduced in evidence. These checks were dated February 6, 1922 and the certificates of deposit were issued on the 7th, 11th and 18th of February. The checks on their face, do not show for what they were issued, but it is certainly evident that they were not paid to appellant as interest on these certificates of deposit, which were not in existence at that time. If they were paid to him as interest, on any deposit, and this is a mere assumption, it would be for interest on the 1921 certificates of deposit. The record shows, however, that one of these

checks was simply a draft payable to cash for six hundred dollars, and was of no value whatever until signed by L. S. Pitts. It then became a draft on the People's Bank of Baldwin for six hundred dollars, and when deposited, reached the bank in due course and the presumption is, from the face of the draft that it would have to be charged to L. S. Pitts' account. The books of the bank, although properly held incompetent, shows that this was in fact done. But without the books to aid the court, the only reasonable presumption is that a draft of this kind would be charged to appellant's account, and that it was not a paper of the bank.

There is only one issue in this case, that is whether these certificates of deposit issued in February, 1922, to the appellant were "bearing a greater rate of interest than four per cent per annum." It matters not what might have been done in 1921 with the other certificates of deposit, although as we have shown the court, there is no competent evidence that the 1921 certificates of deposit bore more than four per cent interest. The question here is, whether these certificates of deposit were to bear more than four per cent interest. If the bank had intended to pay interest to the appellant on the 1921 certificates by the checks which were mailed him, the bank would certainly have charged this to the interest account. In other words, it was necessary for it to be charged to the interest account before it became a payment by the bank. The testimony is conclusive that the certificates of deposit contain the only agreement relative to interest, and that the appellant has never received more than four per cent interest and in fact has received no interest whatever on these certificates, and and that he has not been promised more than four per cent.

By the last clause of the Banking Law each guaranteed bank is required to certify to the Banking Department any deposits which it may have which are not covered

by the guaranty. It is shown by the proof that these certificates were not so certified to the Banking Department. In other words, the bank itself treated this deposit as one guaranteed under the Guaranty Act and in assessing the bank, this deposit was included and the bank had to pay for the protection of this very deposit. The provision requiring all deposits which bear more than four per cent interest and other certificates of indebtedness, not covered under the guarantee clause is for the purpose of arriving at the assessment of the bank and all such taxes are deducted from the total deposit shown by the bank, in making the assessment. So, in the case at bar, we have a depositor appealing to the court for protection when his identical deposit was included by the bank as a part of its total deposits for the purpose of arriving at the amount such bank should be assessed. The lower court assumed that there was something wrong with this deposit on account of the conversation detailed between the witness, L. D. Reed and the appellant, as to the certificates of deposit for 1921. With this in mind, it is clear that the court assumed that there must have been some other agreement than the one evidenced by the written certificates of deposit. This assumption is not derived from the evidence, and the decision of the lower court is manifestly wrong. It is not contended that L. D. Reed was an agent of the bank. He was not an employee of the bank. He has no authority to act for the bank in the light of this record. He did not purport to speak for the bank and we most earnestly submit that whatever he may have said to the appellant to induce him to make a deposit in the People's Bank of Baldwin, does not affect the *status* of these certificates of deposit in the least.

Our Guaranty Law is almost an exact copy of the Kansas Law on the same subject. So far as the same is applicable to this matter, the statutes are practically the same. In the case of *Farm Mortgage Trust Co.* v.

*Wilson,* 205 Pac. 610, the Kansas court held that a depositor was not to be denied protection under the Guaranty Law, because a deposit was solicited by a third party, not an agent of the bank, and who, to advance his own interest, paid the depositor a bonus to procure the making of the deposit.

We, also, call the court's attention to *Farmers and Merchants State Bank* v. *Foster,* 210 Pac. 490. In that case a bonus was offered a depositor by the president and cashier of the bank. The president wrote the depositor a letter as follows: "We will, also, pay four per cent on certificates of deposit for six months and in addition Mr. Lefdrink (the cashier) and myself will agree to add three per cent personal in order to build up a good strong reserve." This is a much stronger case than the *Mortgage Trust Company* v. *Wilson,* 205 Pac. 610, because the persons paying the bonus were, also, employees or officers of the bank, while in the Wilson case, he was a third party who had no connection with the bank. The Kansas court held that the deposit in this case was under the protection of the guaranty clause, although their bonus was paid by the officers of the bank in their individual capacity. In other words, it was not shown that it was the act of the bank in making the payments. If these cases announce the proper rule of law, certainly in the case at bar, where it is not shown that anybody in connection with the bank paid, or offered to pay any bonus, then this deposit will be protected.

It was certainly the duty of the defendant in this cause to prove by a preponderance of the evidence that the complainant either received or contracted to receive more than four per cent on his 1922 deposits, and even though the court was of the opinion that Pitts received more than four per cent for 1921, the evidence certainly would not warrant the court finding that Pitts received or contracted to receive more than four per cent for

1922. We respectfully submit that this is a case in which the decision of the chancellor is manifestly wrong and the case should be reversed.

*Flowers & Brown,* for appellee.

In the light of the appellant's own narrative, is there any wonder that the chancellor should sum up the situation by saying: "Then in February, Cox wrote him a letter, what was in that letter nobody knows. (Pitts insisted that he did not keep it and did not remember about it). He does not pretend to say, does not pretend to remember anything about it, but in that letter he sent him this new certificate of five thousand dollars, dated just like the other certificates were except a year later, and, also, enclosed these two checks for six hundred dollars each, one to be signed by Pitts which would carry the presumption his interest had been charged up, or he had been given credit for it and if he wanted to he could sign the check and take the interest out. He had another check signed by L. D. Reed.—That is a check for six hundred dollars. He wrote the bank or Cox acknowledging receipt of this thing and did not say a thing in the world about the Reed check.—Nothing in that letter to indicate any surprise or appreciation or anything else, and not a word to Reed acknowledging receipt of the six hundred dollar present, never a word to him. If there was not some understanding is that the course the ordinary average man would pursue? Is there a man in the courtroom today getting a check from a man for six hundred dollars and never feeling called upon to acknowledge receipt of it and thank him for it, if he thought and believed it was coming to him as a present?"

We want to call the court's attention to the matter of fact language of Pitts' letter to Cox in which he acknowledges receipt of the checks. "Received the

letter and checks O. K.'' The letter was written just as though Cox and Pitts thoroughly understood each other. That is the way the court construed it. And he was the trier of the facts. Pitts had an ample opportunity to explain this strange transaction but he did not see fit to do so. He told his story and the court passed on it. We met the burden by proving by their own witness to the satisfaction of the court, that there was an agreement. That these certificates did not speak absolute verity and that Pitts was not only promised more than four per cent but did actually receive and accept more than four per cent. Of course, the production of the certificates made out a *prima facie* case, because in the absence of additional proof they were presumed to be regular. But when all the facts and circumstances surrounding their issuance are in evidence, whether given by the plaintiff or the defendant, the presumption ends and the question of whether the certificates did or did not bear a greater rate of interest than four per cent is to be determined from the facts without the aid of any presumption.

Appellant has apparently been able to marshal but few authorities in support of his views. *Farm Mortgage & Trust Company* v. *Wilson,* 205 Pac. 610, and *Farmers & Merchants State Bank* v. *Foster,* 210 Pac. 490, two cases decided by the Kansas court are referred to. These two cases are the only authorities relied on. A most casual reading of them will readily disclose the wide and well-defined distinction between them and the case at bar. Not only do we find that the facts in the Kansas cases were entirely different from the facts in the case at bar but the Kansas Banking Law which was being administered by the Kansas court is entirely different from our law. The Kansas Law is as follows: ''All deposits not otherwise secured, shall be guaranteed by this Act. The guaranty provided for in this act shall not apply to a bank's obligation as indorser on bills rediscounted, nor to bills payable, nor to money

borrowed from its correspondent or others." Gen. Statutes 1915, sec. 600. The Mississippi Law is as follows: "All deposits not otherwise secured, and all cashier's checks, certified checks, or sight exchange, issued by banks operating under this law shall be guaranteed by this act. The guaranty as provided for in this act shall not apply to a bank's obligation as indorser upon bills rediscounted, nor to bills payable, nor to money borrowed for its correspondents or others, *nor to deposits bearing a greater rate of interest than four per cent per annum."* Section 3596, Hemingway's Code. We have underscored the exception in the Mississippi Law that does not appear in the Kansas Law, to-wit, the provision that the guaranty provided by the act shall not extend to deposits bearing a greater rate of interest than four per cent.

In the first case cited by appellant, *Farm Mortgage Trust Company* v. *Wilson, supra,* it was shown that a deposit of ten thousand dollars was made by the Farm Mortgage Trust Company in the Kansas State Bank. A certificate of deposit bearing four per cent was issued by the Kansas State Bank and this together with a personal check for one hundred dollars was mailed to the Farm Mortgage Trust Company by these insurance agents. When this certificate was received by the trust company it was promptly returned to the bank with the information that it must come direct from the bank. Thereupon an officer of the bank telephoned the trust company that it considered the transaction closed. And a representative of the State Banking Department who was at that time in the bank engaged in making an examination of its affairs was called to the telephone and assured the cashier of the trust company that things were regular in the bank and that he saw no reason why the transaction should not be closed. The cashier of the trust company did not stop there, however, but immediately called up the State Bank Commissioner's

officer and verified the identity of the State Bank
Examiner who was in the State Bank and with whom he
had had the conversation about the transaction. He,
also, asked the Bank Commissioner if the Kansas State
Bank was operating under the Guaranty Law and was
assured that it was. He then closed the transaction with
the bank and made the deposit. It will be observed that
under the facts stated the only theory under the Kansas
Law by which a guaranty certificate could be denied
would have been that this was not a deposit but a loan,
for in the language of the court in that case "The deposit
was not otherwise secured; it was not an obligation of
the bank as indorser on rediscounted bills, was not a
bill payable, and has not the characteristics of borrowed
money." And this is the theory upon which the case
was tried and decided.

We are not concerned here with the question of
whether Pitts did or did not have a deposit in the Peo-
ple's Bank of Baldwin. Our contention is that if he had a
deposit in the failed bank it was not guaranteed because
he received more than four per cent and the court so
decided. The fact that the certificates on their face
only showed four per cent does not alter the situation in
the least when it clearly appears that double that amount
was paid out of the general funds of the bank. Reed
says she did not sign the six hundred dollar check. It
was forgery, and was paid by the bank, although Reed's
account had long before that time been closed. Pitts
got the money, and the People's Bank of Baldwin paid
it. It matters not whose name was signed to the check
so long as the funds to pay it were provided by the bank
and not by an individual.

This is not a suit against the People's Bank of Baldwin
as such, but is a suit against the State Banking Depart-
ment seeking to have that department issue its guaranty
certificate against the deposit mentioned. The State
Banking Law which created this fund has its foundation

on the broad ground of public policy. The law was not passed for the protection of banks, but for the protection of the depositors. If a bank sees fit to do so and its depositors or customers care to take the chance, there is nothing to prevent the payment of six per cent interest on deposits. But it is not safe banking. And the other banks in the state will not be called upon to make good the deposit if the bank fails. It is a very simple matter for a bank to pay four per cent on a certificate of deposit and then by some other indirect means pay an additional amount. It is not the bank that connived with him to violate the law that has to make good the loss. It is the other banks that have been doing an honest, legitimate banking business and living up to the requirements of the law that have to pay. Counsel complains of the lack of evidence in this record. We answer that Pitts' own story, coupled with the fatal letter which by accident was overlooked by Cox and permitted to remain in the files of the bank brands this whole transaction as a plain attempt to violate the law, and yet get the benefit of the guaranty fund.

The other authority cited by appellant, *Farmers & Merchants State Bank* v. *Foster, supra,* in no way deals with a situation such as is here presented. That case likewise arose under the Kansas Law. A deposit was solicited by one, Brocker, for the Kansas State Bank. The plaintiff bank was induced by Brocker to make a deposit of twenty thousand dollars in the Kansas State Bank. When the deposit was made Brocker sent the president of the plaintiff bank a check for one thousand dollars. But he did not cash it, nor attempt to cash it. And there was no positive testimony from any of the witnesses that the bank or any of its officers were promised anything in the way of a bonus for making the deposit. The only evidence found was the sending of the check to the president of the plaintiff bank but he did not cash it nor attempt to cash it. And the attempt was made

to show that the deposit ought not to be guaranteed because of a provision in the Kansas Law condemning the act of any officer of a bank in paying interest on any different terms in excess of the rate opposed by the bank commissioner. The court held that the facts did not show a violation of the prohibitions of the statute. We may well hazard the guess that if Hamilton, the man to whom the check was sent had proceeded to cash it; and it had been shown that it was a forged check drawn on the failed bank, sent out by the president of the failed bank presumably with full knowledge of its worthless character, and then paid out of the funds of that bank when presented for payment, the Kansas Court would have reached an entirely different conclusion.

More than four per cent interest paid on the deposit. A very adroit argument is made by counsel for appellant to the effect that the additional six hundred dollars paid to Pitts was on his 1921 deposit and not on the 1922 which forms the basis of this suit. They go so far as to explain that no interest at all has been paid on the 1922 deposit. It was the same money, the same deposit, why should he not expect the same return? He says he placed his money up there at Baldwin because he wanted to help his boy. But the boy only stayed three months and left. He had no other business interest in that part of the state. Of course, he was not actually paid during the year 1922 any interest at all because the bank failed before the interest paying period. That is not the question. The question is was his deposit under the terms of his agreement with Cox of the failed bank bearing a greater rate of interest than four per cent? Taking his own statement as true he has already been paid twelve hundred dollars on this deposit and to this must be added the face value of the interest for 1922, namely four per cent. This will make a total of approximately eighteen hundred dollars up to the date of the failure of the bank. Appellant is asking for a judgment for the

interest on his deposit for 1922 in the sum of four per cent or six hundred dollars. And this in addition to the twelve hundred dollars he has already been paid. It amounts in all to eighteen hundred dollars interest, and he has only had fifteen thousand dollars on deposit for two years; eighteen hundred dollars is exactly six per cent interest on fifteen thousand dollars for two years. If there is anything in the provision of the law that no deposit bearing a greater rate of interest than four per cent shall be guaranteed it most certainly ought to cover · this case.

As to the appellant's knowledge of the excessive rate of interest. It is contended that Pitts was innocent of the wrongful act of Cox paying more than four per cent on this deposit. In the first place we do not think it material one way or the other. There is no requirement of the law that the payment of more than four per cent must be with the knowledge of the depositor. The question is did the bank pay more than four per cent. Under the case of *Farm Mortgage Co.* v. *Wilson, supra,* the authority relied on by counsel in support of appellant's contention, the Kansas Court unequivically says that if "the bank itself" pays the bonus, it takes the deposit outside the scope of the guaranty law. In *American State Bank* v. *Wilson,* 204 Pac. 709, a deposit was solicited and secured for a bank in Salina, Kansas, by one . Crummer. The deposit was in the sum of fifty thousand dollars and when it was made he sent the check of a man named Flack drawn on a bank in Kansas City in the sum of five thousand dollars to the depositor as a bonus. This man and Flack were associates in business. Flack raised the five thousand dollars by discounting a worthless note or a note that proved worthless in the failed bank. The court held that even though the check for the bonus was drawn on another bank, and although it was apparently paid by a third person, the funds in truth and in fact came out of the failed bank and it amounted

to the same as a payment by the bank. And a guaranty certificate was denied. This case is directly in point with the case at bar. It is on all fours with it. There is no difference between honoring a worthless check and discounting a worthless note. The funds came out of the bank. See, also, the case of *Board of Commissioners of Barber County* v. *Foster,* 213 Pac. 1064, where the county was denied a guaranty certificate because its deposit was drawing more than four per cent. In this case it was shown that the State Bank Commissioner had at least possibly consented to the payment of the excessive amount in order to meet the competition of a National Bank. But the court held that in cases of this sort where the interest of the public is concerned there could be no estoppel. That the soundness of the Banking system of the state was of paramount importance, and denied the certificate.

Section 3597, Hemingway's Code shows clearly that the lawmakers intended to safeguard banks against the reckless conduct of their officers. And especially does it emphasize the fact the deposits bearing interest at a greater rate than four per cent were not to be protected by the guaranty fund. The payment of more than four per cent is condemned by the law. To violate this provision puts the managing officer of the bank in the criminal class and relieves the guaranty fund of liability for the deposit. And it makes no difference whether the payment is made "directly" or "indirectly" or by a "managing officer" or "by any person acting in its behalf or for its benefit." Under this law we submit that it would have been unlawful for Reed to have paid this extra interest himself under the circumstances of this case, for the reason that the whole arrangement was "for the benefit" of the bank. But we do not have to rely on that proposition because the money that Pitts got was paid by the People's Bank of Baldwin and not by Reed. It came out of the general funds of the bank.

The record shows this and counsel for appellant admits it in his brief.   There can be no doubt but that the chancellor's finding' of fact as to the existence of the agreement between Cox and Pitts is amply supported by the record.   It is amply supported by Pitts' own statement, coupled with that of Reed and the letter written to Cox acknowledging receipt of the twelve hundred dollars.   This finding of fact will not be disturbed by this court.

*Smiths, Young, Leigh & Johnston, Mitchell & Clayton* and *J. R. Anderson,* in reply for appellant.

Appellee has dealt at length with our citation of the case of *Farm Mortgage Trust Company* v. *Wilson,* 205 Pac. 610, and sought to show to the court that our construction of that decision is altogether erroneous.   The decision speaks for itself.   While the Mississippi statute and the Kansas statute. may be different in verbiage, the decision clearly shows that the law of Kansas and the law of Mississippi is the same to the effect that, if more than four per cent interest is paid on a time deposit, the deposit is not guaranteed, and we insist here that one of the questions determined in the Wilson case, *supra,* was whether a time deposit certificate in that case actually bore a rate of interest at a greater rate than four per cent.   In the statement of facts in that case the court said: "A deposit of ten thousand dollars to the credit of the Kansas State Bank upon which plaintiff was to receive interest on the certificate at the rate of four per cent, a rate authorized by the bank commission, and the agents agreed to pay plaintiff a bonus of one hundred dollars, which if added to the interest on the six months' certificate would be equivalent to six per cent."   Again the court said: "After the bank became insolvent a demand was made upon the bank commissioner to issue a certificate on the bank guaranty fund,

but he declined to issue it on the ground that the trust company had received a rate of interest in excess of four per cent, and the advancement of the one hundred dollars by the insurance agents to bring the rate of the trust company equal to six per cent.''

Of course, there was another contention made in the case, to-wit, that the character of the transaction made it a loan between the two banks, but it is manifest that one of the principal questions involved was whether or not the deposit bore interest at a greater rate of interest than four per cent, the amount which the State Banking Department had fixed as a proper amount for time deposits to bear. It will be observed that the court said as follows: ''It is insisted that under the facts found the transaction between the bank and trust company was in fact a loan and that in any view it was not a deposit within the meaning of the Guaranty Law. One of the grounds for the contention is the payment of a bonus for a hundred dollars by the insurance agents who solicited and secured the deposit. In the present case the ten thousand dollars represented by the certificate given the plaintiff was received and used by the bank and the rate of interest named in the certificate was the approved rate of four per cent.'' The court observed that there were some circumstances in the case which tended to show the borrowing of money rather than a deposit and its words are as follows: ''These circumstances in connection with tending to show a borrowing of money, might characterize the transaction as a loan, but of themselves, and where the bonus is paid by a third party, they do not.'' The appellants say in their brief quoting from the decision that, ''A different rule would apply if the bank had issued a certificate bearing a higher rate of interest than the maximum allowed by the Commissioner or the bank itself had paid a bonus to obtain a deposit that would increase the rate of interest beyond that authorized to be paid.'' Of course, a

different rule would apply because if the rate of interest agreed to be paid was in excess of what the State Banking Department of that state had authorized to be paid on time deposits, it would not have been guaranteed, or if it borrowed money from its correspondents, that is, if it was a loan it would not be guaranteed and instead of the quotation from the decision, which the appellants have inserted in their brief, being opposite to our views, it is in direct accord with same.

Appellee refers to the case of *Farmers & Merchants State Bank* v. *Foster,* 210 Pac. 490, the case which we cited in our original brief. The question in that case was did the plaintiff agree to receive, or did he actually receive more than four per cent upon his time deposit. It seems from the facts in the case that the State Banking Department had fixed four per cent as the maximum rate of interest that could be paid on time deposits. If a greater rate of interest than that was paid, the deposit was not guaranteed. Also, the very case that appellant has cited in his own behalf shows that the laws of the two states are not different in principle. Appellee in his brief cites the case of *Board of Commissioners in Barber County* v. *Foster,* 213 Pac. 1054. In this case we find the court saying: "Originally the guaranty fund protects only time deposits not bearing interest and time certificates bearing not more than three per cent, this was amended in 1911 so as to read, etc., . . . The effect of the amended statute is not to admit deposits to participate in the guaranty fund if interest is paid on deposits in excess of a rate approved by the bank commissioner." Again the court said the "principle that a deposit bearing a rate of interest in excess of that approved by the bank commissioner is not protected by the bank guaranty fund, is not new in this court."

We, therefore, submit that the law of Kansas is not. different on the question involved in this case from the

law of the state of Mississippi. Of course, the case of the *Board of Commissioners of Barber County* v. *Foster, supra,* cited by appellee held that the deposit was not protected. In that case the uniform rate fixed by the banking department was four per cent, while there was a written agreement shown on the minutes of the County Commissioners Journal that the bank had agreed to pay four and one half per cent, this clearly took the deposit out of the terms of the Act. There were other questions involved in that case, to-wit, whether or not the Bank Commissioner had authority to approve the four and one half per cent agreement and whether he actually approved it, but this is a question which, of course, cannot arise in the present case before the court. Counsel in their brief, speaking of the second deposits which were evidenced by the series of three new time certificates, which were to mature in 1923, say as follows: "It was the same money, the same deposit, why should he not expect the same return." The three deposits made in 1921 as evidenced by three time certificates, which matured in 1922, were separate and distinct deposits from those deposits made in February, 1922, as evidenced by the three time certificates issued in February of that year to mature a year later. As we asserted in our original brief, the supreme court of Kansas in the case of *Fourth National Bank* v. *Wilson,* 204 Pac. 719, said: "There is no all-inclusive or all-exclusive definition of the term deposit, but the essentials are well understood. Money left with a bank, subject to the order of the person leaving it, is a deposit. A deposit may be accomplished by taking credit on the books of the bank for a discounted note or even by some obligatory arrangement with the bank for credit. In creating a deposit, pure formalities may be dispensed with, such as taking money across the counter on a matured certificate of deposit and passing it back to obtain a new certificate." So we say in the case at bar, a surrender

by appellant of the 1921 certificates and the issuance to him of 1922 certificates of deposit, constituted a new deposit.

This court has committed itself to the doctrine that the relation existing between a bank and a depositor is simply one of debtor and creditor. See *Moreland et al.* v. *People's Bank of Waynesboro,* 74 So. 828, 114 Miss. 203   An ordinary bank deposit, however, is different from an ordinary debt, in this, that from its very nature it is constantly subject to the check of the depositor, and is always payable on demand. *Moreland* v. *People's Bank, supra.* The Mississippi Guaranty Banking Act which guarantees an ordinary depositor simply means that the duty which the bank owes to the depositor, that is, the contract existing between them, will be carried out.

A time deposit as evidenced by a time certificate is really the same as an ordinary deposit. The only difference being that an ordinary deposit is payable on demand and does not bear interest, while a time deposit is payable at a stipulated time and may or may not bear interest according to the agreement between the parties. 7 C. J., sec. 342, pp. 650, 651. The relation, however, of creditor and debtor exists between the time depositor and the bank. The Mississippi Guaranty Banking Law, therefore, in guaranteeing a time deposit not bearing interest in excess of four per cent, merely guarantees that the particular contract the depositor has with the bank will be carried out. The surrender of the old certificates of deposit and the taking of new certificates of deposit to mature a year later constituted new deposits within the meaning of the law. *Fourth National Bank* v. *Wilson, supra.* We see, therefore, that it is really the contract between the depositor and bank that is guaranteed; and the contracts (evidenced the three certificates of deposit dated February, 1922) the basis of this suit, not having been made until February, 1922,

can have no possible connection with the deposits or contracts made in February, 1921.

Counsel devote a considerable part of their brief to the argument "that the State Banking Law, which created this fund has its foundation on the broad ground of public policy." This public policy is discussed at length. We have no issue to make on this line of argument, but we would like to call the court's attention to the fact that it is, also, good policy to have the law so established that when a depositor puts his money in the bank, that he will be protected, and that in case of failure, he will not have to resort to courts to get his rights, but that his deposit is guaranteed, and that the Banking Department will issue certificates and recognize his deposit. Especially this is true when his money has been taxed for the very protection which he has been denied.

Argued orally by *Sam Johnson* and *Guy W. Mitchell* and *J. T. Brown,* for appellee.

COOK, J., delivered the opinion of the court.

The People's Bank of Baldwin having become insolvent, was taken over by the State Banking Department for liquidation, its affairs being administered under the direction of the chancery court of Lee county. The appellant filed a petition in the matter seeking to have the court order the State Banking Department to issue a guaranty certificate in his favor for fifteen thousand dollars, represented by three certificates of deposit, and, from a decree denying the relief prayed for, this appeal was prosecuted.

During the month of February, 1921, the appellant, L. S. Pitts, deposited in the People's Bank of Baldwin, Miss., a state bank, operating under the State Guaranty Law, the sum of fifteen thousand dollars. This deposit

was evidenced by three certificates of deposit, bearing four per cent. interest per annum, one of these certificates being dated February 7, 1921, one February 10, 1921 and one February 18, 1921. As to the circumstances under which these deposits were made, and his dealings with the bank, the appellant testified, in substance, that in the early part of 1921 he was a conductor on the Mobile & Ohio Railroad, his train run being from Okolona, Miss., to Mobile, Ala., and that he then had on deposit with the Merchants' & Farmers' Bank of Meridian the sum of fifteen thousand dollars; that in the early part of that year he had a conversation with one L. D. Reed, who was in the lumber business at Tupelo, Miss., in which conversation Reed's lumber business was discussed, and appellant suggested to him that he was anxious for his son to learn the business, and requested Reed to take his son into the business with him.

According to the testimony of the appellant, Reed stated that he could not take another person into his business because he was not financially able to do an amount of business that would justify the employment of another man. Reed then requested the appellant to loan him some money on good collateral, but appellant declined this arrangement, assigning as a reason that he was under written contract to take care of a note in Meridian, and would have to keep his money where he could get it when needed. Reed then proposed to the appellant that, since he would not loan him the money, if he would move it to the People's Bank of Baldwin, he, Reed, would be able to secure from that bank such accommodation as he needed. Reed stated to appellant that the People's Bank was under the Guaranty Law the same as the bank with which he was then carrying his money, and that he had been advised by the People's Bank that it would loan him additional money if it could secure some additional deposits. The arrangement between

Reed and appellant proceeded no further at that time, but a week or ten days later they again met, and according to the witness, the following conversation took place:

"He asked what I thought about changing my money, and wanted to know if I still wanted my boy to learn the lumber business, and I said, 'Yes; I am very much interested in that, and I don't see any reason why I could not deposit my money there, and if you can negotiate with the bank, that is your business, I will take my money and deposit it for four per cent., the same as I am getting, and if you can make arrangements with the bank, that is your business.' And he said, 'That will be perfectly all right.' "

The appellant then testified that he agreed with Reed to take his son into the business, and that a few days later he sent his son to work for Reed, giving him a five thousand dollar certificate of deposit for deposit in the People's Bank; that a few days later he went to Tupelo and Baldwin and looked over Reed's business and the situation generally, and that everything looked so prosperous, and he was so impressed with the president of the People's Bank, that he made two other deposits of five thousand dollars each, for which he received the certificates of deposits hereinbefore referred to. He further testified that Reed told him that if he put his money up there, and the boy was dissatisfied with the lumber business and did not stay with him, that, if he made anything that year, he would compensate him for his kindness to him. The appellant's son remained with Reed only a short time, and appellant further testified that about a month before the maturity of his certificates of deposit he met Dr. Cox, the president of the People's Bank, in Okolona, and had a conversation with him in which he inquired about the business of Reed and the affairs of the bank; that Dr. Cox told him that Reed had a very prosperous year, and had made good money; that the bank had made twenty-two per cent. dividends

for the year, and that no stock thereof was for sale; that he informed Dr. Cox that he was thinking about moving his money to a bank at his home in Waynesboro; that Dr. Cox urged him to leave it with his bank for another year, stating that the same guaranty was behind each of these banks and both paid the same rate of interest, to-wit, four per cent., and that he finally agreed to leave the money with the People's Bank another year; that, about the time his certificates matured, he received from Dr. Cox, president of the People's Bank, a letter inclosing the bank's check for six hundred dollars, being four per cent. interest on the amount of his three certificates, and also a check on the said People's Bank for six hundred dollars, signed by L. D. Reed; and that when he received these checks he supposed Reed had made considerable money and wanted to compensate him by making him a present, as he said he would, and that he had handed the check to Dr. Cox to be forwarded to him. He further testified that there was no definite contract or obligation on Reed's part to pay him anything, but that "it was only an honor proposition on his part."

Upon receipt of the letter from Cox inclosing the two six hundred dollar checks, Pitts returned to the bank the three original certificates of deposit and received three new certificates for the same amounts; the letter returning these original certificates to Dr. Cox, president of the bank, being, in part, as follows: "I am inclosing you the three certificates in this letter. . . . Rec'd the letter and checks O. K." These three new certificates, which were introduced in evidence, and upon which this suit is based, were each for five thousand dollars, and were dated respectively February 7, February 11, and February 18, 1922, and provided for interest thereon at four per cent. per annum payable twelve months after date. Before the maturity of these certificates the bank was declared insolvent, and was taken over by

the State Banking Department for liquidation. The check for six hundred dollars which was signed by L. D. Reed and received by Pitts about February 8, 1922, was deposited for collection, and paid by the People's Bank out of the funds of the bank.

L. D. Reed, as a witness for the defendant bank, testified that the six hundred dollar check to which his name was signed, and which had been forwarded to appellant by Dr. Cox, was a forgery; that he did business with this bank during the first part of the year 1921, but that, at the time this check was issued in February, 1922, he had no account with this bank, and that he authorized no one to pay any sum to the appellant, Pitts. He admitted the several conversations with Pitts in reference to transferring his money to the People's Bank, and the agreement ot take appellant's son into his business, and testified that he told the appellant that if his son did not make good in the lumber business, if he made good money out of the business, he would like to give him something anyway to show his appreciation of the assistance rendered him by placing the money in this bank so that he would be able to borrow a sufficient amount to meet his needs. He testified however, that no particular amount was specified or agreed upon, and that, in fact, he made no money out of the lumber business in the year 1921. He further testified that during the summer of 1921, he disclosed to Dr. Cox the fact that he had hoped to be able to pay Mr. Pitts something to show his appreciation of this assistance to him.

Section 1, chapter 207, Laws of 1916 (section 3596, Hemingway's Code), providing for the guaranty of state bank deposits, is, in part, as follows:

"All deposits not otherwise secured and all cashier's checks, certified checks or sight exchange issued by banks operating under this law shall be guaranteed by this act. The guaranty as provided for in this act shall not apply to a bank's obligation as indorser upon bills

rediscounted, nor to bills payable, nor to money borrowed from its correspondents or others, nor to deposits bearing a greater rate of interest than four per cent. per annum.''

Applying this statute, the court below found upon this evidence that the six hundred dollars paid to the appellant, Pitts, by the bank on the check signed by Reed was in effect a payment by the bank of more than four per cent. for the year 1921, and that it was paid in pursuance of some understanding or agreement between the bank and Pitts, or with knowledge on the part of Pitts that it was a payment by the bank, thereby rendering the 1921 certificates without the protection of the bank guaranty fund; and also that the certificates of deposit issued in 1922 were merely a continuity of the old contracts created by the original deposits, and that the excess interest paid at the time of the maturity of the 1921 certificates should be applied as interest or a bonus for the entire two years, thereby infecting the 1922 certificates with the same infirmity as were the 1921 certificates.

It seems to be established on reason and authority that a depositor will not be denied protection under the Guaranty Law because the deposit was solicited by a third party, not an agent of the bank, and who, to advance his own interest, paid the depositor a bonus to procure the making of the deposit, and it seems clear that such would be the case where the bonus was actually paid out of the funds of the bank, if the depositor had no such understanding or agreement with the bank, and no knowledge of the fact that the bank was paying the bonus.

In the case of *Farm Mortgage Trust Co.* v. *Wilson,* 110 Kan. 786, 205 P. 610, the supreme court of Kansas had under consideration a provision of the Kansas Banking Law which in effect is the same as ours, the difference upon this point being that our statute fixes a maximum

rate of four per cent. interest that may be paid on guaranteed deposit, while the Kansas law authorizes the state bank commissioner to fix the maximum rate that may be paid, and the commissioner had fixed this rate at four per cent. In the Mortgage Trust Company Case, *supra,* a bonus of one hundred dollars had been paid to the trust company for making the deposit, and in stating the issues involved the court said:

"After the bank became insolvent, a demand was made upon the bank commissioner to issue a certificate on the bank guaranty fund, but he declined to issue it on the ground that the trust company had received a rate of interest in excess of four per cent., and the advancement of the one hundred dollars by the insurance agents to bring the rate of the trust compeny equal to six per cent."

There were other questions involved but in deciding this issue the court held:

"A deposit in a bank for which a certificate was issued bearing interest at the rate approved by the bank commissioner is not rendered invalid nor taken out of the protection of the state guaranty fund because it was solicited by a third party not the agent of the bank, and who to advance his own interest paid the depositor a bonus to procure the making of a deposit."

In the case of *Farmers' & Merchants' State Bank* v. *Foster,* 112 Kan. 141, 210 P. 490, the president and cashier of the bank, in order to secure a deposit, agreed that in addition to four per cent. to be paid by the bank, they would personally pay an additional amount of three per cent. of the amount of the deposit. The court held that it was not shown that it was the act of the bank in making this payment, and that the deposit was within the protection of the Guaranty Law.

In the case at bar there is no testimony whatever to show, or from which the conclusion may be drawn, that in soliciting this deposit Reed was the agent of, or in

any way connected with, the bank, and it is difficult to understand upon what evidence the court found that there was an understanding or agreement between appellant and the bank that more than four per cent, would be paid, or that more than four per cent. was paid by the bank with the knowledge of the appellant.   The certificates of deposit on their face bear the authorized rate of four per cent.   If the testimony of the appellant is true, he received the bonus in good faith, believing that it was paid by Reed.   The testimony of Reed, a witness for the bank, tends to support the version of the appellant, rather than to contradict it.   If the testimony of the appellant on this point is untrue, then there is no evidence to support the contrary finding, except the fact that the president of the bank mailed to the appellant a forged check, and that this check was accepted by him. However, without expressly deciding that the circumstances surrounding the receipt and acceptance of this check are insufficient to support the finding of the chancellor that more than four per cent. was paid on the 1921 certificates, a majority of the court is clearly of opinion that there is nothing in the record to justify the finding that the six hundred dollars interest or bonus, or any part thereof, was paid on the 1922 certificates.   The certificates on their face bear interest at the rate of four per cent. per annum, and the record is entirely silent as to any other contract in reference to these certificates.

We also are of the opinion that the chancellor was in error in holding that the deposits for 1921 and the deposits for 1922 constituted one continuous transaction, and that the excess interest paid at the time of the maturity of the 1921 certificates should be applied as interest or a bonus for the entire two years.   As we said in the case of *Fourth National Bank* v. *Wilson,* 110 Kan. 389, 204 P. 719, "in creating a deposit, pure formalities may be dispensed with, such as taking money across the counter on a matured certificate of deposit, and passing

it back to obtain a new certificate," and when the appellant surrendered the 1921 certificates of deposit, and the bank issued and mailed to him the 1922 certificates, this was not a continuation of the old contract created by the original deposit, but it constituted a new contract just as though the depositor had received in cash the amount of his deposit, and had later redeposited it in the bank and accepted new time certificates. The record being silent as to any payment or any agreement or contract to pay more than four per cent. interest or any bonus of any kind, for the year 1922, the judgment of the court below will be reversed, and judgment will be entered here directing the issuance of the guaranty certificates as prayed for in appellant's petition.

*Reversed and judgment for appellant.*

SYKES, J., dissents.

ANDERSON, J., took no part in the decision of this case.