State, ex rel. Davis, v. Home State Bank.

---

STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, ET AL., APPELLEES, v. HOME STATE BANK, APPELLEE: FIRST NATIONAL BANK ET AL., APPELLANTS.

FILED JANUARY 22, 1925. No. 23230.

1. **Banks and Banking:** GUARANTY FUND: "DEPOSIT." A number of the stockholders of D. bank, for the purpose of securing a certificate of deposit of that bank with which to pay their note to X., executed their individual notes payable to C. bank indorsed with recourse by D. bank, and delivered them to the C. bank, which thereupon entered upon its books in favor of the D. bank credit "not subject to check" for the amount of the notes, the agreement being that the credit should not be withdrawn by D. bank. *Held,* that such credit did not constitute a deposit in or at the command of D. bank within the protection of the state guaranty law.

2. ——: ——: ——. A claimant against the state bank

guaranty fund is not entitled to protection as an innocent purchaser under the negotiable instruments law, but must establish the existence of a deposit within the meaning of the act providing liability of such fund.

APPEAL from the district court for Blaine county: EDWIN P. CLEMENTS, JUDGE. *Affirmed.*

*Burkett, Wilson, Brown & Wilson,* for appellants.

*O. S. Spillman, Attorney General, Lloyd Dort, C. M. Skiles* and *N. T. Gadd, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD and THOMPSON, JJ., REDICK and SHEPHERD, District Judges.

REDICK, District Judge.

Applications of various persons holders of certificates of deposit issued by the Home State Bank of Dunning for allowance of the same against the state guaranty fund.

Applicants show that they became the owners of the certificates in good faith and for value before due, and claim that they are entitled to the protection of the law as applied to good faith purchasers of negotiable instruments, and a good proportion of their brief is devoted to a discussion of that question. But, while there is no doubt that certificates of deposit are negotiable instruments entitled to the protection of the law governing the same as between private parties dealing therewith, since the filing of the briefs in this case we have decided in *State v. Farmers State Bank,* 111 Neb. 117, that, where the question is of the allowance of such claim against the guaranty fund, the law of merchants or the negotiable instruments law have no application. As was said in that case by Day, J.: "The circumstances under which the guaranty fund may be liable are entirely apart from the law pertaining to negotiable paper. A holder of a certificate of deposit in a bank who seeks to hold the guaranty fund liable for its payment must show that the transaction leading up to the issuance of the certificate was such that the law holds the guaranty fund liable for its payment." See, also, *Fourth Nat. Bank*

*v. Wilson,* 110 Kan. 380. The final and decisive question presented for our decision, then, is whether or not the certificates of deposit in question were lawfully issued against deposits in the Dunning bank, which must be determined by a consideration and analysis of the facts and circumstances surrounding their issuance, about which there is little dispute, and which may be summarized as follows:

From the date of its organization up until about April 24, 1920, C. C. Cooper was president of the Dunning bank, and about said date sold all of his stock to six other stockholders of the bank, to wit, Wilson, McGinn, Wegner, Rankin, Hankins, and Ocher, who, in payment for said stock, gave their joint note to Cooper for $20,000 due October 1, 1920. On that date Cooper demanded payment, but the makers were unable to make it. Cooper refused to renew the note, but suggested that if the makers could procure certificates of deposit of the Dunning bank for the amount, due in 12 months, he could handle such certificates in California, where he was then living, but could not handle individual notes. As the makers were not permitted by law to borrow the money from the Dunning bank, being stockholders therein, upon the suggestion of Cooper that they procure the money on their notes from some other bank, one C. E. Wilson, cashier of the Dunning bank, caused to be prepared and signed by the six purchasers, above named, a note for $20,000 payable to the Citizens State Bank of University Place, Nebraska, and on or about October 7, 1920, took the same to the Citizens State Bank, and explained the situation to its president, Mr. Bair, and requested a loan of $20,000 upon the note as security. Being informed by Bair that the bank did not have that much money to loan, Wilson suggested that the money need not leave the bank, but should remain there to the credit of the Dunning bank. Bair replied that that put a different aspect upon the matter, and it was finally arranged that credit should be given upon the books of the Citizens bank, which was accomplished in the following manner: Bair

made out a deposit slip in favor of the Home State Bank of Dunning for $20,000, marking same "Not subject to check," and credited the same to the Dunning bank. Wilson says this deposit slip was made out upon his first visit to the bank, October 7 or 8, but the only deposit slip in evidence is dated the 16th of October, and the credit was entered on the bank books October 16, and not before. As a part of the transaction, however, it was further agreed that Wilson should procure separate notes for $3,333.33 each, signed by one maker and indorsed by the five others, which was later carried out on October 27, 1920, under the same understanding that the fund was not to be drawn out of the bank. Bair required that these notes be indorsed by the Dunning bank with recourse, which was done, the intention of Bair being to charge out the notes against the credit if they were not paid. On the afternoon of the same day, October 7 or 8, 1920, C. E. Wilson met Cooper at the First National Bank in Lincoln and, having brought the blank certificates of deposit with him, issued to C. C. Cooper three certificates of deposit dated October 7, two for $5,000 each, and one for $10,000, due in 12 months, with interest at 5 per cent. per annum, in consideration of which Cooper delivered to Wilson his $20,000 note and the shares of stock of the Dunning bank which he had sold and held as collateral to the note. The two $5,000 certificates were assigned to the First National Bank of Glendale, California, and represent their claim herein. May 2, 1921, the $10,000 certificate of deposit was exchanged for ten certificates of deposit of $1,000 each, due six months after date, which were assigned by Cooper to one E. U. Emery, who filed claim herein, but whose interest has been transfered to C. C. Cooper, intervener. Another certificate of deposit upon which claim is made is dated May 2, 1921, for $282, and represents the interest due upon the $10,000 certificate of deposit at the time of the exchange above related, and assigned by Cooper to claimant A. A. Rezac for attorney's fees.

Notwithstanding the agreement between Wilson and Bair that the funds should not be withdrawn from the Citizens bank the Dunning bank drew drafts against the credit, which were refused payment, and the Citizens bank thereupon, on December 10, 1920, charged the Dunning bank with $15,000, and later, January 11, 1921, with $1,666.66, thus canceling the credit to that extent by charging the notes against it, and returned the notes to the Dunning bank. They also charged the Dunning bank with $150 and $41.80 interest. The McGinn note was not charged off, but no drafts upon this credit were permitted; and later this note was renewed and is now held by the Citizens bank. This condition of the account was maintained until May 20, 1921.

On May 20, 1921, new notes were executed by Rankin and Hankins, and July 8, 1921, by Ocher, Wilson, and Wegner, each for $3,333.33, and indorsed, respectively, by the other five stockholders and deposited with the Citizens bank, and thereupon the credit of the Dunning bank was reinstated in the sum of $16,666.66, and was later drawn out upon drafts of the Dunning bank upon the advice of the state bank examiner. These notes were not indorsed by the Dunning bank, but were secured by second mortgages on real estate of the signers. The Citizens State Bank continues to hold the five notes and that of McGinn, or renewals thereof, aggregating $20,000.

The question then recurs whether upon the above facts the claimants have shown such a deposit in the Dunning State Bank as is entitled to the protection of the state guaranty fund. A number of facts have been referred to occuring after the issuance of the certificates in question, but the legal status of the certificates of deposit must be determined as of their date, the subsequent occurences being of material consideration only as they may tend to characterize the original transaction. The subsequent deposit of notes secured by real estate mortgages and withdrawal of the funds thereby secured, while it might

have enabled the bank finally to pay its certificates of deposit, could not give validity to the original transaction as against the guaranty fund if it had not before. To recapitulate the situation: October 7, 1920, the stockholders desired to borrow money with which to pay their debt to Cooper. They were unable to do so on their notes, but Cooper was willing to accept certificates of deposit of the Dunning bank at 12 months, so the arrangement was made whereby the Citizens bank agreed to accept their notes indorsed by the Dunning bank and give credit to the latter for $20,000, with the express understanding that the money should not be withdrawn. Did this transaction constitute a deposit against which the Dunning State Bank might lawfully issue its certificates of deposit? It has been so often stated as to become a truism, that no definition of a deposit is possible which will cover all the situations arising in financial transactions, and, therefore, it has not and will not be attempted. Perhaps as broad a definition as any is contained in *Fourth Nat. Bank v. Wilson,* 110 Kan. 380, in the following language: "Speaking generally, to create a deposit within the meaning of the statute, money or the equivalent of money must in intention and effect be placed in or at the command of the bank, under circumstances which do not transgress specific limitations of the bank guaranty law." This language was approved by this court in *State v. Banking House of A. Castetter,* 110 Neb. 584, and in *State v. Farmers State Bank,* 111 Neb. 117. It will be noted that under this definition the money or its equivalent must be placed in or at the command of the bank. In the instant case the money was not placed in the bank. Now, was it placed at the command of the bank? The evidence shows that the condition of credit being given was that the money remain in the Citizens bank, and that when the Dunning bank attempted to draw it out the credit was canceled and the notes upon which it was based were returned to the Dunning bank. Under this state of affairs we are unable to perceive any control that the Dunning

bank had over the money. The moment they attempted to draw it out the Citizens bank applied against the supposed credit the notes which the Dunning bank had indorsed. The transaction appears rather to be a loan of the credit of the Citizens bank to the Dunning bank upon which the latter drew its certificates of deposit. It was an attempt on the part of Cooper and the stockholders to charge the guaranty fund with the payment of Cooper's note for $20,000. The giving of such restricted credit to the Dunning bank upon the security of the indorsement of that bank added nothing to its assets, the credit simply being absorbed by the obligation. The transaction assumes all the characteristics of a loan, but not of a deposit. No doubt a deposit may be effected by depositing money in one bank to the credit of another *(American State Bank v. Bank Commissioner,* 110 Kan. 520), but it presupposes that control of the fund is vested in the bank to whom credit is given. And no doubt if the stockholders had arranged with the Citizens bank for a loan and deposited the same in that bank to the credit of the Dunning bank without condition, but in the ordinary course, it would have constituted a deposit entitled to protection. But we are of opinion that the undisputed facts established by the evidence did not constitute the fund in question a deposit. The certificate of deposit for $282, being for interest upon the $1,000 certificate of deposit, must fall with it.

We find no error in the record, and the judgment of the district court is

AFFIRMED.

Note—See Banks and Banking, 7 C. J. sec. 15.